ROLAND L. BELSOME, Judge.
| jThis appeal is taken from the trial court’s granting of a Coastal Use Permit (CUP) in favor of Industrial Pipe. For the following reasons, we affirm.
Industrial Pipe operates the Oakville Landfill in Plaquemines Parish. Industrial Pipe has 65.7 acres of land permitted by the Louisiana Department of Environmental Quality for the operation of a Type III C & D landfill. Within the 65.7 acres are 8.3 acres which are designated wetlands. A CUP is required in order for Industrial Pipe to operate in the 8.3 acres of wetlands.
Originally, Industrial Pipe submitted its application for a CUP in October of 2001. The Plaquemines Parish Council (Council) granted the CUP in November of 2003. In 2009, this Court determined that the granting of the CUP by the Council was proeedurally flawed, since the Statement of Justification for Recommendation of Coastal Zone Permit was not issued by the Parish Coastal Zone Administrator until April 21, 2006. That action by the Council violated the procedural guidelines. Thus, the CUP was vacated.[1]
|2In April of 2010, Industrial Pipe submitted a new CUP application. The Department of Natural Resources determined the issue was a local concern and did not review either CUP application. After Plaquemines Parish’s Coastal Program Manager and the Parish Coastal Zone Advisory Committee reviewed the new application, it was recommended that the Parish Council grant Industrial Pipe’s application. However, at its September 22, 2011 meeting, by a vote of eight to one, the Parish Council denied Industrial Pipe’s CUP application.
Industrial Pipe filed suit against the Parish alleging that the denial of the CUP application was unreasonable; arbitrary; and capricious, not consistent with the goals, policies and provisions of state law; and violated Plaquemines Parish’s local ordinances. Thereafter, Oakville Community Action Group, Louisiana Environmental Action Network and Gloria Mayfield intervened in the suit.
The trial court proceeded with a trial de novo.[2] In a trial de novo, the trial court is the court of original jurisdiction.[3] Following trial, the trial court rendered judgment granting Industrial Pipe a CUP. The Parish and the intervenors (collectively the appellants) appealed. The following assignments of error have been raised on appeal:[4]
1. The trial court erred in holding that allowing Industrial Pipe’s expansion into areas zoned Flood Plain, did not violate applicable Plaquemines Parish zoning ordinances;
2. The trial court erred in holding that the running of prescription under LSA-R.S. 9:5625 négated zoning ordinances;
ls3. The trial court erred in holding that the evidence at trial demonstrated Industrial Pipes’s satisfaction of applicable coastal use statutes and regulations, and the Louisiana Administrative Code;
4. The trial court erred when it determined that Industrial Pipe’s CUP application satisfied the criteria under LAC 43:I.701(H) without conducting the requisite analytical process required to demonstrate compliance with that section; and
*1170 5. The trial court erred when it failed to determine that Industrial Pipe’s CUP application violated La. R.S.49:214.30(C)(3).
In addition to the common assignments of error asserted by the appellants, the inter-venors assert that the trial court erred in admitting certain documentary evidence offered by Industrial Pipe.
On appeal, this Court reviews questions of fact under a manifest error standard.[5] In applying the manifest error rule to the trial court’s interpretation, a court of appeal may not simply substitute its own view of the evidence for the trial court’s view, nor may it disturb the trial court’s finding of fact so long as it is reasonable.[6] The appellate court reviews questions of law de novo to determine whether the trial court was legally correct.[7]
The 8.3 acres of land that the CUP pertains to is located in the Flood Plain Zoning District. In the first and second assignments of error, the appellants contend that the zoning ordinance in Plaque-mines Parish mandates that “[t]he use of property ... in the FP-Flood Plain District shall be limited” to one of fourteen | ¿listed uses, and landfill is not one of the permitted uses. Thus, using the 8.3 acres as landfill is a non-conforming use that violates the Parish’s zoning ordinances.
The evidence presented at trial established that there was a 1982 resolution by the Parish approving the use of Industrial Pipe’s Flood Plain property for landfill operations.[8] Although the resolution was originally issued for Industrial Pipe’s predecessor, Oakville Landfill, it encompassed a portion of the same geographical location currently at issue.[9] Furthermore, in 1990, when Industrial Pipe was operating the landfill, the Parish council again recognized that the landfill was being operated in a Flood Plain and issued a permit for Industrial Pipe to conduct landfill activities within that area. The trial court found the evidence supported the Parish’s approval of the landfill operations in the Flood Plain.
In addition to the trial court’s finding that Industrial Pipe proved the Parish had previously authorized the landfill operations to be conducted in the Flood Plain, it found that a non-conforming use had been obtained through prescription. La. R.S. 9:5625(A)(3) provides that:
With reference to violations of use regulations all such actions, civil or criminal, except those actions created for the purpose of amortization of nonconforming signs and billboards in conformity with the provisions of R.S. 33:4722, must be brought within five years from the date the parish, municipality, and the properly authorized instrumentality or agency thereof if such agency has been designated, first had been actually notified in writing of such violation.
Considering the 1982 and 1990 resolutions together with the previously granted |5CUP application in 2003,[10] the trial court determined that the necessary agencies for the Parish had been on notice of the land *1171 fill activities in the Flood Plain for more than five years. Thus, the time period to raise any zoning violations had prescribed. We find the documentation in the record adequately supports that conclusion and therefore find no error with the trial court’s determination.
Appellants’ assignments of error three, four, and five challenge the sufficiency of evidence presented by Industrial Pipe to establish that it met the guidelines and requirements set forth by applicable coastal use programs, the Louisiana Administrative Code and the Parish’s Costal Zoning Management Program. The appellants argue that the trial court erred in its analysis of applicable statutes, mainly, Louisiana Administrative Code 43.1.701(F) and 715(C)-(D).
The guidelines and requirements that Industrial Pipe needed to meet in order to be granted a CUP are found in La. Admin. Code 43:1.701 et seq. The statutes are constructed to give the issuing authority direction and oversight in the permitting process. Ideally, waste disposal should be avoided in wetlands.[11] However, it may be allowed, if the permitting authority finds, among other things, that “there are no feasible and practical alternative locations, methods, or practices for the use that are in compliance with the modified standard.”[12] Ultimately, the permitting authority must balance the benefits against any adverse impact when determining whether the CUP should be issued.
^Louisiana Administrative Code 43.1.701 provides the guidelines for applicable coastal uses. Subsection (F) requires the applicant to provide information regarding nineteen enumerated factors.[13] The per *1172 mitting authority is mandated to use the information when evaluating whether the proposed use is in compliance with the guidelines.
After a comprehensive review of Industrial Pipe’s CUP application, Albertine Kimble, Local Coastal Program Manager for Plaquemines Parish, drafted the “Statement of Justification for Recommendation of a Coastal Use Permit”. That recommendation concluded that Industrial Pipe had sufficiently demonstrated that it complied with and satisfied all applicable coastal use guidelines. Ms. Kimble reached that conclusion by detailing the facts supporting each requirement |7set forth in subsection (F). At trial, she testified consistent with her previously drafted recommendation.
Likewise, the trial court carefully analyzed the testimony and documentary evidence and applied it to the relevant factors set forth in subsection (F). In so doing, the appellants argue that the trial court erroneously found that Industrial Pipe had satisfied its burden regarding no available and feasible alternative sites.[14]
Although there is no clear directive on the precise quantity or quality of the evidence necessary to satisfy the lack of feasible alternative sites condition, two cases where the issue has been addressed are Matter of Browning-Ferris Industries Petit Bois Landfill[15] and Pardue v. Stephens.[16] In Matter of Browning-Ferris Industries Petit Bois Landfill, Browning-Ferris sought to establish a 150 acre solid waste landfill. The First Circuit determined that the DEQ had acted arbitrarily and capriciously in granting a solid waste permit to Browning-Ferris. That finding was based on the insufficient evidence presented in the application regarding alternative sites. The trial court found the boundaries of the search too narrow given the area that the landfill would serve.[17]
The second case is Pardue v. Stephens. Pardue was a restaurant owner that sought a CUP for filling and dredging wetlands. Pardue’s CUP application was denied by the Department of Natural Resources. Then, like in this case, the trial court held a trial de novo and found that the CUP application guidelines had been ^sufficiently met and granted the permit. The First Circuit determined the trial court’s analysis was incomplete and independently reviewed the evidence. Subsequently, the granting of the CUP for the filling of wetlands for the parking lot expansion was affirmed. However, the court reversed on permitting the dredging of the wetlands for a slip to permanently dock the barge that was already serving as a floating restaurant. The court cited to the lack of proof regarding no feasible and practical alternative locations, methods and practices, while stating that there was no necessity for the barge to be moved from its current position.
The instant case can be distinguished from both cases relied on by the appellants. First, in Browning-Ferris, the plaintiff sought a DEQ license to open and run a 150 acre solid waste landfill. Industrial Pipe is fully licensed by the DEQ to run a Type III C & D landfill on the whole *1173 of its 65.7 acre footprint. Because Industrial Pipe seeks to use adjacent land that is already licensed by the DEQ, we find the parameters set forth by Browning-Ferris regarding the feasibility of an alternative location are not suitable for this case.
On the other hand, the Pardue case involves the application for a CUP and is more analogous to this case. However, in Pardue, the testimony established that there was not a necessity for the proposed relocation of the barge and in fact there was a feasible alternative to moving the structure.[18] To the contrary, the evidence in this case supports the expansion into the wetland area. There is a necessity for the landfill in Plaquemines Parish as established by the testimony of Parish President William Nungesser and Coastal Zone Management Program Manager IflAlbertine Kimble. Those witnesses also testified that they were unaware of any suitable alternative sites. As stated in Pardue, the decision maker must consider what alternatives would be available to a reasonable person in a normal situation. Here, the collective testimony of the witnesses indicates that it is far more reasonable to expand operations on the existing landfill site than open a new landfill. The appellants also aver that the trial court failed to give the requisite analytical analysis set forth in LAC 43:I.701(H).[19] We disagree. As directed by the statutes, the trial court thoroughly analyzed the evidence and methodically applied it to the relevant factors.
If it is determined that wetlands are to be utilized, the facility must be designed and constructed to withstand adverse conditions without releasing pollutants and to prevent leaching, control leachate production, and prevent the movement of leach-ate away from the facility. LAC 43:I.715(C)-(D).[20] At trial, | ^Industrial Pipe introduced the testimony of an expert in the field of soil science, Dr. Yong Soon Goh, as well as, the testimony of the ad *1174 ministrator of waste permits for the DEQ, Scott Guilliam. Both witnesses confirmed that leachate collection systems and liners were not needed in a Type III C & D facility like Industrial Pipe. Additionally, Dr. Goh stated that he studied the geology of the 8.3 acres and found it was of low permeability with no need for a liner. Dr. Goh also indicated that the facility was above sea level and surrounded by an earthen berm with a run off system for storm water.
Lastly, the appellant intervenors argue that the trial court erroneously allowed numerous inadmissible documents to be entered into evidence. It is well settled that this Court will not disturb a trial court’s evidentiary ruling unless there is a clear showing that it abused its discretion.[21] This record does not clearly evidence an abuse of discretion on the part of the trial court.
Viewing the record in its entirety, we find no errors on the part of the trial court in granting a CUP for the expanded operations of an existing licensed landfill. Accordingly, the trial court’s judgment is affirmed.
AFFIRMED.

. Oakville Comm. Action Group v. Plaquemines Parish Council, 08-1286 (La.App. 4 Cir. 2/18/09), 7 So.3d 25.

. See Pardue v. Stephens, 558 So.2d 1149 (La.App. 1st Cir.1989).

. Id.

. The defendants and the intervenors have asserted essentially the same assignments of error.

. Syrie v. Schilhab, 96-1027 (La.5/20/97), 693 So.2d 1173.

. Id.

. Lakeland Anesthesia, Inc. v. United Healthcare of Louisiana, Inc., 03-1662, p. 9 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, 388.

. The resolution included language specifically granting a permit for the operation of a sanitary landfill and consenting to the operation of the landfill in the Flood Plain.

. Although the land mass may not be precisely the same, the land was clearly in the Flood Plain.

. This Court revoked that CUP in 2009. See Oakville Comm. Action Group v. Plaquemines Parish Council, supra.

. La. Admin. Code 43:1.715(A).

. La. Admin. Code 43:I.701(H).

. La. Admin. Code 43:1.701(F) provides: Information regarding the following general factors shall be utilized by the permitting authority in evaluating whether the proposed use is in compliance with the guidelines:
1. type, nature, and location of use;
2. elevation, soil, and water conditions and flood and storm hazard characteristics of site;
3. techniques and materials used in construction, operation, and maintenance of use;
4. existing drainage patterns and water regimes of surrounding area including flow, circulation, quality, quantity, and salinity; and impacts on them;
5. availability of feasible alternative sites or methods of implementing the use;
6. designation of the area for certain uses as part of a local program;
7. economic need for use and extent of impacts of use on economy of locality;
8. extent of resulting public and private benefits;
9. extent of coastal water dependency of the use;
10. existence of necessary infrastructure to support the use and public costs resulting from use;
il.extent of impacts on existing and traditional uses of the area and on future uses for which the area is suited;
12. proximity to and extent of impacts on important natural features such as beaches, barrier islands, tidal passes, wildlife and aquatic habitats, and forest lands;
13. the extent to which regional, state, and national interests are served including the national interest in resources and the siting of facilities in the coastal zone as identified in the coastal resources program;
14. proximity to, and extent of impacts on, special areas, particular areas, or other areas of particular concern of the state program or local programs;
15. likelihood of, and extent of impacts of, resulting secondary impacts and cumulative impacts;
16. proximity to and extent of impacts on public lands or works, or historic, recreational, or cultural resources;
17. extent of impacts on navigation, fishing, public access, and recreational opportunities;
18. extent of compatibility with natural and cultural setting;
19. extent of long term benefits or adverse impacts.

. La.Admin Code 43:1.701(F)(5).

. 93-2050 (La.App. 1 Cir. 6/23/95), 657 So.2d 633.

. 558 So.2d 1149 (La.App. 1st Cir.1989).

.Matter of Am. Waste & Pollution Control Co., 633 So.2d 188 (La.App. 1st Cir.1993), was also cited by the appellants for the same premise.

. The Pardue court referenced the report of a representative from the Department of Wildlife and Fisheries which stated: "I see no reason why the barge should be moved from its present location. Mooring by cluster pilings or barge spudding should provide adequate stabilization.” ’ Pardue, 558 So.2d at 1168.

. LAC 43:1.701(H) provides in pertinent part:
In those guidelines in which the modifier "maximum extent practicable” is used, the proposed use is in compliance with the guideline if the standard modified by the term is complied with. If the modified standard is not complied with, the use will be in compliance with the guideline if the permitting authority finds, after a systematic consideration of all pertinent information regarding the use, the site and the impacts of the use as set forth in Subsection F above, and a balancing of their relative significance, that the benefits resulting from the proposed use would clearly outweigh the adverse impacts resulting from noncompliance with the modified standard and there are no feasible and practical alternative locations, methods, and practices for the use that are in compliance with the modified standard and:
a. significant public benefits will result from the use; or
b. the use would serve important regional, state, or national interests, including the national interest in resources and the siting of facilities in the coastal zone identified in the coastal resources program, or;
c. the use is coastal water dependent.

.LAC 43:1.715 provides in pertinent part:
C. Waste facilities located in wetlands shall be designed and built to withstand all expectable adverse conditions without releasing pollutants.
D. Waste facilities shall be designed and constructed using best practical techniques to prevent leaching, control leachate production, and prevent the movement of leachate away from the facility.

. Bell v. Treasure Chest Casino, L.L.C., 2006-1538, pp. 3-4 (La.2/22/07), 950 So.2d 654, 656.