2015-1105 (La.App. 4 Cir. 12/2/16)

**Vernon WILLIAMS d/b/a V.J.'s Hollywood Lounge**

v.

**The PARISH OF ST. BERNARD**

**NO. 2015–CA–1105**

Court of Appeal of Louisiana, Fourth Circuit.

DECEMBER 2, 2016

Thomas Milliner, Brian J. Burke, AN-ZELMO MILLINER & BURKE, LLC, 3636 South I–10 Service Road West, Suite 206, Metairie, LA 70001, COUNSEL FOR PLAINTIFF/APPELLANT

William M. McGoey, Cory S. Grant, Scott M. Smith, 8201 West Judge Perez Drive, Chalmette, LA 70043, COUNSEL FOR DEFENDANT/APPELLEE

(Court composed of Judge Max N. Tobias, Jr., Judge Rosemary Ledet, Judge Sandra Cabrina Jenkins)

JUDGE SANDRA CABRINA JENKINS

Plaintiff, Vernon Williams d/b/a V.J.'s Hollywood Lounge, appeals the district court's December 3, 2014 judgment that affirmed the St. Bernard Parish Council's decision to revoke plaintiff's alcohol permit and the district court's May 18, 2015 judgment that denied plaintiff's motion for new trial. Finding that the district court erred in affirming the St. Bernard Parish Council's decision, we reverse and vacate the revocation of plaintiff's alcohol permit. In regard to the additional claims raised by plaintiff's petition and dismissed by the district court's December 3, 2014 judgment, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND [1]

Plaintiff has owned and operated V.J.'s Hollywood Lounge ("V.J.'s"), a bar in St. Bernard Parish ("SBP"), since at least 2005. In March 2005, the SBP Council ("the Council") suspended plaintiff's alcohol permit for V.J.'s for six months pursuant to SBP Code of Ordinances, Chapter 3, Section 3–26(f) (hereinafter cited as "SBP Ordinances, Ch., Sec.").[2] Plaintiff appealed the Council's decision to the district court and, subsequently, appealed the district court's judgment affirming the suspension of the permit to this Court. In *Williams v. Parish of St. Bernard*, 07–1316 (La.App. 4 Cir. 5/28/08), 984 So.2d 937 (*"Williams I"*), this Court reversed the suspension of plaintiff's permit upon finding that the Council had violated plaintiff's due process rights by failing to provide sufficient notice

---

1. As discussed herein, this is plaintiff's third appeal of a Council decision to suspend or revoke permits for V.J.'s. The previous two appeals arose from the same underlying suit in the district court and involved related enforcement actions by the Council. Plaintiff filed the instant petition for review under the same district court case number from the previous litigation. In ruling upon an exception of res judicata filed by the Council, the district court found that the instant suit involves a separate, distinct Council decision that is not directly related to the previous litigation; the district court's March 9, 2012 judgment on exceptions overruled the exception of res judicata and ordered that the instant petition for review be re-allotted as a separate suit and assigned a new docket number.

2. SBP Ordinances, Ch. 3, Sec. 3–26(f) provides:

   If any disturbance of the peace, public nuisance or other violation of state law or of this chapter is committed on said premises, the president of the parish council, with the approval of the parish treasurer or the sheriff, is hereby authorized to suspend or revoke said [alcohol] permit, and such violation shall be cause for the parish council to refuse to grant other parish permits to the same applicant or for the conduct of such business on the same premises. In case of such suspension or revocation, permittee may appeal to the parish council for a hearing, to remove or recall the suspension or revocation, pending which hearing no liquor or beer shall be sold by permittee, under the penalties provided by this chapter. No appeal shall lie to the courts, nor shall the courts have or take jurisdiction of any appeal from such suspension or revocation, unless the permittee has exhausted his administrative remedy of appeal to the parish council in the event of an adverse decision.

of the alleged violations of the SBP Ordinances.

Pending the resolution of *Williams I*, Hurricane Katrina struck and destroyed V.J.'s. Approximately three years later, following this Court's decision in *Williams I*, plaintiff began reconstruction of V.J.'s. The Council then issued a cease and desist order for illegal construction and, subsequently, denied zoning approval and alcohol permits on the basis that V.J.'s had lost its legal nonconforming use by failing to resume use within six months of discontinuance. In response, plaintiff filed a petition for a writ of mandamus in the district court, requesting that the Council be ordered to issue all necessary permits and licenses to plaintiff for the reconstruction of V.J.'s and for resuming operations as a legal nonconforming use. Upon review, the district court upheld the Council's decision and dismissed plaintiff's mandamus petition. Plaintiff appealed the district court's judgment to this Court. In *Williams v. Parish of St. Bernard*, 10–0397 (La.App. 4 Cir. 10/13/10), 49 So.3d 520 ("*Williams II*"), this Court found that the district court ₃erred in concluding that Mr. Williams lost his nonconforming use status when the discontinuance resulted from Hurricane Katrina. Accordingly, this Court reversed the district court's judgment dismissing plaintiff's writ of mandamus.

During the pendency of the two previous appeals, V.J.'s remained closed. Following this Court's decision in *Williams II*, plaintiff obtained the building permits required to complete reconstruction of V.J.'s in accordance with applicable SBP Ordinances. After completing reconstruction in 2011, plaintiff applied for permits to sell alcohol ("alcohol permit") from the State of Louisiana and SBP and to resume operations of V.J.'s. In April 2011, plaintiff obtained an alcohol permit from the State, and his application for an alcohol permit from SBP was pending before the Council. At the April 19, 2011 and May 3, 2011 Council meetings, the Council neither considered nor approved plaintiff's application for an alcohol permit. On May 11, 2011, plaintiff filed a petition for a writ of mandamus in the district court, requesting that the Council be ordered to issue him an alcohol permit for V.J.'s. At the next Council meeting, held on June 8, 2011, the Council approved the issuance of the alcohol permit for V.J.'s. Subsequently, plaintiff dismissed his petition for a writ of mandamus and, having obtained all the necessary permits, opened V.J.'s on July 1, 2011.

On September 9, 2011, the Administrator of the Alcohol Beverage and Bingo Department, Mary Chimento, issued a memorandum to the Clerk of the Council stating that she had received a sworn affidavit from Kevin Williams, a resident living across the street from V.J.'s, requesting that the alcohol permit for ₄V.J.'s be revoked.[3] Ms. Chimento stated that the

3. SBP Ordinances, Ch. 3, Sec. 3–34 provides in pertinent part as follows:

(a) The procedure for the suspension or revocation of permits shall be substantially as follows:

...

(4) Any person may file with the alcohol beverage and bingo department a sworn petition requesting that a permit be suspended or revoked. When such petition is received by the alcohol beverage and bingo department, the administrator shall notify the police jury [now, SBP Council] of such petition along with his recommendations. If action requires either a revocation or suspension of a license, the police jury shall call a public hearing within thirty (30) days after receipt of notice from the administrator of the alcohol beverage and bingo department.

(b) The recommendations of the administrator of the alcohol beverage and bingo department will be presented in writing to the secretary of the police jury.

(c) No such petition shall be considered by the police jury unless sworn to by the peti-

complaints in Mr. Williams' affidavit established violations of two SBP Ordinances, citing (1) Ch. 3, Sec. 3–27(5): Prohibited acts on premises (relative to disturbance of the peace or obscenity, or any lewd, immoral, or improper entertainment, conduct or practices) and (2) Ch. 20, Sec. 20–136: Parking not to obstruct traffic. Based on the two alleged violations, Ms. Chimento recommended that the Council revoke the alcohol permit for V.J.'s.

Upon receiving Ms. Chimento's recommendation of revocation, the Council issued notice to plaintiff of the alleged violations of the SBP Ordinances, Ch. 3, Sec. 3–27(5) and Ch. 20, Sec. 20–136.[4] Along with the notice, the Council sent copies of four SBP Sheriff's Department incident reports of complaints received between July 1, 2011 and August 6, 2011, involving improper parking near V.J.'s, loud music, and disturbances outside of V.J.'s. Plaintiff acknowledges receipt of the notice of the alleged violations, the incident reports, and a hearing date before the Council.

On September 21, 2011, the Council held a public hearing on the recommendation to revoke the alcohol permit for V.J.'s. The Council heard testimony from Kevin Williams regarding the complaints about V.J.'s described in his affidavit. Kevin Williams also brought a DVD of video footage he allegedly recorded from his house, located across the street from V.J.'s. The DVD was played for the Council while Kevin Williams continued to testify regarding incidents he observed outside of V.J.'s on unspecified dates. Upon learning from Kevin Williams that a copy of the DVD had not been provided to plaintiff prior to the hearing, the Council voted to adjourn and resume the hearing on a later date in order to allow plaintiff and his attorney time to review a copy of the DVD and to allow the Council to issue subpoenas for the SBP Sheriff's deputies who prepared incident reports.

On December 19, 2011,[5] the Council resumed the public hearing on the recommendation to revoke the alcohol permit for V.J.'s. The Council heard testimony from plaintiff and two witnesses on his behalf, Rawdon Kendall Rex Lowe and Robert Lofton; Kevin Williams and his mother, Elizabeth Williams;[6] and two SBP Sheriff's deputies, Deputy Jeffery Westerfield

---

tioner in an affidavit, which also affirms that the petitioner, together with witnesses, if any, will appear at the hearing to establish the allegations of the petition, and unless the petition sets forth facts constituting a cause enumerated in or authorized by this chapter for the suspension or revocation of a permit.

4. The record does not include a copy of the notice issued to plaintiff on September 9, 2011. However, in his appellant brief, plaintiff states that he received such notice and the attached incident reports from the Council on September 9, 2011. Plaintiff has not raised an assignment of error regarding insufficient notice of the two alleged violations of the SBP ordinances.

5. On December 7, 2011, the Council convened a Special Meeting for a hearing on V.J.'s, but plaintiff informed the Council that neither he nor his attorney received notice of a hearing scheduled for that day. The Council determined that the public hearing notification had not been published. The Council rescheduled the hearing for December 19, 2011 and adjourned the meeting. That same day, December 7, 2011, the Council issued an official notification of the next hearing date to plaintiff's attorney. The notice included a copy of Kevin Williams' affidavit, four SBP Sheriff's Department incident reports, a copy of the DVD submitted to the Council by Kevin Williams, and a list of the proposed witnesses to testify at the hearing.

6. Ms. Williams, Kevin Williams' mother, stated her name as Elizabeth Williams during the Council meeting on December 19, 2011, but stated her name as Lillie Mae Williams during the district court trial. Hereinafter, she will be referred to as Elizabeth Williams.

and Deputy Jason Preveau testified for SBP. After hearing witness testimony, the Council voted to convene in executive session in order to "consult with our attorney." Upon returning to open session, the Council Chair, Mr. Auderer, stated he would entertain a motion to either revoke the alcohol permit for V.J.'s or to allow V.J.'s to retain the permit. Mr. Auderer stated that a vote to revoke the alcohol permit would be on the grounds of "health and safety standards relative to parking, disturbing the peace by sound, loitering, lewd, immoral, and improper, and illegal conduct." A motion was made and seconded to vote on revocation. Prior to taking the vote, Councilmember Wayne Landry offered a substitute motion to vote for suspension rather than revocation of the alcohol permit; the substitute motion failed for lack of a second. The Council then voted on the motion for revocation, which passed by a vote of 4-to-1.

On December 28, 2011, plaintiff timely appealed the Council's decision to revoke his alcohol permit by filing a petition for review in the district court, in accordance with La. R.S. 33:4788 and SBP Ordinances, Ch. 3, Sec. 3-45. In his petition for review, plaintiff argued that the Council failed to adduce sufficient evidence to support a finding of cause for revocation of his alcohol permit under state law or SBP Ordinances. In addition, plaintiff raised a claim that the Council violated Louisiana's Open Meetings Law by entering into executive session to deliberate about the revocation, and such violation rendered their decision on the matter void. Plaintiff sought for the district court to reverse the Council's decision to revoke the alcohol permit and to award attorney's fees, damages and costs for any violation of the Open Meetings Law. Plaintiff subsequently filed an amending and supplemental petition asserting additional claims of civil rights violations by the Council, under 42 U.S.C. §§ 1982 and 1983; plaintiff alleged that the Council acted with discriminatory intent against plaintiff on the basis of his race and deprived him of his constitutional rights to property, equal protection, and due process.

The district court trial was held on November 20, 2014. The district court admitted into evidence several exhibits offered and introduced by the Council, including the transcripts and recordings of the Council hearings and the four SBP Sheriff's Department incident reports. The district court also heard testimony from Kevin Williams, Elizabeth Williams,[7] Earl Dauterive, plaintiff, and former SBP Councilmember Wayne Landry. At the conclusion of testimony, counsel did not present arguments, but the district court announced a briefing schedule for the submission of post-trial briefs. However, on December 3, 2014, prior to the deadline for the submission of post-trial briefs, the district court rendered a judgment and reasons for judgment that affirmed the Council's decision to revoke plaintiff's alcohol permit for V.J.'s.

On December 16, 2014, plaintiff filed a motion for new trial and/or to set aside the judgment pending submission of post-trial briefs to address the legal issues raised during the trial. Following a hearing on May 15, 2015, the district court rendered a judgment on May 18, 2015, denying plaintiff's motion for new trial and/or to set aside the judgment.

Plaintiff now appeals the district court's December 3, 2014 judgment affirming the Council's revocation of the alcohol permit for V.J.'s and the May 18, 2015 judgment denying his motion for new trial.

7. *Supra,* n. 6.

## STANDARD OF REVIEW

The holder of an alcohol permit who is aggrieved by a decision of the governing body of the municipality or parish or a municipal alcoholic beverage control board to suspend or revoke the permit is entitled to appeal the suspension or revocation to the district court. La. R.S. 33:4788; *see also,* La. R.S. 26:106(A); SBP Ordinances, Ch. 3, Sec. 3–45. The district court shall review the decision of the municipality or parish by trial *de novo. Id.;* see La. R.S. 26:106; SBP Ordinances Ch. 3, Sec. 3–45; *Bibbins v. City of New Orleans,* 02–1510, p. 12 (La.App. 4 Cir. 5/21/03), 848 So.2d 686, 695; *Brossette v. Alcoholic Beverage Control Bd.,* 611 So.2d 1391, 1394 (La. 1993). In a trial *de novo,* the reviewing court can make its own factual determinations, exercise its own discretion, and substitute its own judgment for that of the governing, decision-making body. *Pardue v. Stephens,* 558 So.2d 1149, 1159–60 (La. App. 1st Cir. 1989); *see also Scott v. Moore,* 214 La. 1090, 1094, 39 So.2d 741, 742 (1949).

On appeal of the district court's judgment, the appellate court reviews the district court's findings under the manifest error or clearly wrong standard of review. *Bibbins,* 02–1510, p. 12, 848 So.2d at 695. If the district court's findings are reasonable in light of the entire record, then the appellate court may not reverse even though if sitting as the trier of fact, it would have weighed the evidence differently. *Rosell v. ESCO,* 549 So.2d 840, 844 (La. 1989). Where there are two permissible views of the evidence, then the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id.*

While the district court's factual findings are subject to manifest error review, the appellate court gives no special weight to the district court's findings on questions of law, but exercises its constitutional duty to review questions of law *de novo* and render judgment on the record. *Winston v. Millaud,* 05–0338, p. 5 (La.App. 4 Cir. 4/12/06), 930 So.2d 144, 150. Appellate review of questions of law is simply a determination of whether the trial court was legally correct or legally incorrect in its application of the law. *Richard v. Richard,* 14–1365, p. 3 (La.App. 4 Cir. 6/3/15), 171 So.3d 1097, 1100, *quoting Harruff v. King,* 13–940, p. 4 (La.App. 3 Cir. 5/14/14), 139 So.3d 1062, 1066, *writ denied,* 14–1685 (La. 11/7/14), 152 So.3d 176. "A legal error occurs when a trial court applies the incorrect principles of law and such errors are prejudicial." *Banks v. New Orleans Police Dept.,* 01–0859, 01–1302, p. 3 (La.App. 4 Cir. 09/25/02), 829 So.2d 511, 514.

## DISCUSSION

In this appeal, plaintiff raises seventeen assignments of error that involve procedural and evidentiary rulings by the district court, sufficiency of the evidence to support revocation, the Open Meetings Law, and civil rights violations.[8] We begin with a discussion of whether the district court conducted a proper trial *de novo,* pursuant to La. R.S. 33:4788. We then review the evidence properly admitted at trial in support of the Council's decision to revoke the alcohol permit to determine if the district court erred in affirming the Council's decision. Finally, we discuss whether the district court erred in dismissing plaintiff's additional claims of an Open Meetings Law violation and civil rights violations.

---

8. We do not address each of plaintiff's assignments of error because our finding that the district court erred in finding that the Council established sufficient cause for revocation is determinative.

**Trial *de novo***

■ Plaintiff argues that the district court erred by failing to conduct a trial *de novo*, because the district court admitted into evidence the transcripts, recordings, and exhibits from the Council hearings held on September 21 and December 19, 2011.

■ Louisiana's Alcoholic Beverage Control Law ("the ABC Law") specifically provides that an appeal to the district court of a decision to revoke an alcohol permit shall be filed in the same manner as an original suit and shall be tried *de novo. See* La. R.S. 33:4788; *see also* SBP Ordinances, Ch. 3, Sec. 3-45(a). Where a statute provides for a trial *de novo*, as in this case, the reviewing court acts as the court or agency of original jurisdiction and the whole case is open for a decision. *Pardue*, 558 So.2d at 1159; *Industrial Pipe, Inc. v. Plaquemines Parish Council*, 13-1345, p. 2 (La.App. 4 Cir. 5/21/14), 139 So.3d 1168, 1169. A trial *de novo* is separate and distinct from an "appeal *de novo*" or "*de novo* review" in which the reviewing court makes findings based upon a review of the judicial record. *Fini v. Alcoholic Beverage Control Bd. for City of Baton Rouge*, 09-0854, p. 6 (La.App. 1 Cir. 2/10/10), 35 So.3d 301, 304. As discussed by the First Circuit in *Pardue*, several statutes in Louisiana provide specifically for the judicial review of an administrative proceeding by a trial *de novo* rather than a *de novo* review of the record of the administrative proceeding as provided for in the Louisiana Administrative Procedure Act ("LAPA"). *See Pardue*, 558 So.2d at 1159. "[J]udicial review under the LAPA involves only a *review of the record* of the administrative agency; it does not involve a trial *de novo*. La. R.S. 49:964." *Id.*, 558 So.2d at 1159-60; *see also Buras v. Board of Trustees of Police Pension Fund of City of New Orleans*, 367 So.2d 849, 853 (La.

1979). By contrast, a trial *de novo* of an administrative proceeding is a new trial on the entire case, on both questions of fact and issues of law, conducted as if there had been no trial in the first instance. *Fini*, 09-0854, p. 6, 35 So.3d at 304-05.

■ After review of the record of the district court trial, we find that the district court did not conduct only a review of the record of the Council proceedings. After admitting into evidence the record and exhibits from the Council proceedings on September 21 and December 19, 2011, the district court afforded the parties the opportunity to present testimony and additional evidence. The Council presented the testimony of Kevin Williams, Elizabeth Williams, and Earl Dauterive. Plaintiff also testified and offered additional evidence and the testimony of Wayne Landry. Thus, based on the admission of additional evidence and testimony, we find sufficient support that the district court conducted a trial *de novo* rather than merely a judicial review of the record of the Council proceedings. However, we find merit in plaintiff's argument that the district court erred in admitting certain evidence at the trial *de novo*, because the district court's findings and determination at a trial *de novo* must be based upon competent evidence.

In *Brossette v. Alcoholic Beverage Control Bd.*, 611 So.2d 1391 (La. 1993), the Louisiana Supreme Court reversed the six-month suspension of Brossette's alcohol permit by the local Alcoholic Beverage Control Board upon finding that the district court failed to conduct a trial *de novo* and only reviewed the record of the Board hearing, which included a large amount of hearsay testimony that should have been excluded. In finding that the trial court improperly relied upon the record of the Board hearing, the Court stated,

> At the Board hearing, the police officers repeated other parties' complaints

to prove that Brossette's club was the location of criminal activity. Investigative reports by police are subject to the hearsay rule. LSA–C.E. art. 803(8)(b)(i). The Authors' Comments point out that complaints of crime made to the police are not admissible evidence, being hearsay within hearsay.

Brossette was entitled to a district court trial *de novo* under LSA–R.S. 33:4788. See *P & G Retailers, Inc. v. Wright*, 590 So.2d 1272 (La. App. 1st Cir. 1991). At that trial, the hearsay evidence at the Board hearing should have been excluded.

*Id.* at 1394.

Similarly, in *Bibbins v. City of New Orleans*, this Court found that the trial court erred in not excluding hearsay testimony from its trial *de novo* on the City's revocation of an alcohol permit. 02–1510, p. 10, 848 So.2d at 694. Upon review of the trial proceedings, this Court found that the testimony from two police officers "referred to print-outs from a computer database concerning various incidents" and such references were hearsay and should have been excluded; "[t]he testimony of all witnesses not based on first-hand knowledge was hearsay and was not competent evidence." *Id.*

In this case, at the beginning of the trial, plaintiff's counsel objected to the admission into evidence of the transcripts and recordings of the Council hearings and the four SBP Sheriff's Department incident reports "on the grounds of hearsay and that this is a *de novo* proceeding." Plaintiff's counsel argued that the appeal of the Council's decision was not an appeal on the administrative record and that the introduction of testimony of an individual not present at the district court hearing was hearsay. The district court overruled each of plaintiff's objections to the admission into evidence of the transcripts, re-

cordings, and the incident reports "for the same reason, in that [the Council hearing] was an administrative hearing and it's part of the record." While the district court was correct that hearsay evidence is admissible in an administrative hearing, hearsay evidence cannot be considered competent evidence; and it cannot be used in determining whether the findings of the Council are supported by sufficient evidence. *See Romano v. Whitfield*, 535 So.2d 12, 14 (La. App. 4th Cir. 1988); *see also Driscoll v. Stucker*, 04–0589, p. 26 (La. 1/19/05), 893 So.2d 32, 51. At the trial *de novo* of the Council's decision to revoke the alcohol permit, the Council had the burden to present sufficient, competent evidence to support its finding that plaintiff committed or permitted violations of "health and safety standards relative to parking, disturbing the peace by sound, loitering, lewd, immoral, and improper, and illegal conduct" that constitute cause for the revocation. *See Bibbins*, 02–1510, p. 12, 848 So.2d at 695. Moreover, the district court's findings and determination must be based on admissible, competent evidence.

Therefore, to the extent that the transcripts and recordings of the Council hearings included testimony from witnesses that were not present at the district court trial *de novo*, we find that the district court erred in admitting into evidence the entire record of the Council proceedings. In particular, as raised in a separate assignment of error by plaintiff, we find that the district court erred in admitting the four SBP Sheriff's Department incident reports without trial testimony from the reporting deputies. While two of the four reporting deputies testified at the December 19, 2011 Council hearing, none of the reporting deputies were called to testify before the district court. Therefore, as held in *Brossette* and in *Bibbins*, we find the incident reports constitute hearsay evi-

dence that should have been excluded absent the testimony of deputies with first-hand knowledge of the complaints.[9] *See* La. C.E. Arts. 801(D)(1), 803(8)(b)(i).

### Sufficiency of Evidence for Revocation

▮ We now turn to consider what competent evidence and testimony was presented at the trial *de novo* and whether it was sufficient evidence to support and affirm the Council's finding of the alleged violations as cause for the revocation of plaintiff's alcohol permit.

▮ Pursuant to Louisiana's ABC Law and local laws authorized thereby, no alcohol permit shall be withheld, suspended, or revoked except for causes or prohibited acts specified under Louisiana's ABC Law or governing local ordinances. La. R.S. 26:94; SBP Ordinances, Ch. 3, Sec. 3–35; *see also*, La. R.S. 33:4787. A governing municipality or parish that seeks to suspend or revoke an alcohol permit must provide notice to the holder of the permit of the cause or causes alleged for suspending or revoking the permit and must comply with all procedures set forth under the ABC Law, including the requirements for a hearing and determination of cause. *See* La. R.S. 26:93 *et seq.*; SBP Ordinances, Ch. 3, Secs. 3–34, *et seq.* As noted previously by this Court in *Williams I,* "the method of revoking a permit must be rigidly followed by those who seek to make the revocation" in order to ensure the

right of due process to the holder of the permit. 07–1316,p. 9, 984 So.2d at 943–44, *quoting Dauenhauer v. City of Gretna,* 93 So.2d 27, 30 (La. App. Orl. 1956). Furthermore, the governing municipality or parish must adduce sufficient evidence at the hearing to establish the alleged violations constituting an enumerated cause for the suspension or revocation of a permit. *See Bibbins,* 02–1510, pp. 23–24, 848 So.2d at 700–01.

At trial, the Council introduced the memorandum, dated September 9, 2011, from the Administrator of Alcohol Beverage and Bingo Department to the Clerk of the Council recommending the revocation of the alcohol permit for V.J.'s based on the facts alleged within the affidavit of Kevin Williams, which was also introduced.[10] Although the record does not include a copy of the notice from the Council to plaintiff, plaintiff acknowledges receiving notice from the Council, on September 9, 2011, of a hearing to consider possible revocation of the alcohol permit for V.J.'s based on the alleged violations of SBP Ordinances, Ch. 3, Sec. 3–27(5) and Ch. 20, Sec. 20–136. The notice included a copy of the affidavit of Kevin Williams and four SBP Sheriff's Department incident reports.

By his affidavit, Kevin Williams petitioned the Council to revoke V.J.'s alcohol permit and attested that he had observed

---

9. Even upon review of the testimony of the two SBP Sheriff's deputies from the December 19, 2011 Council hearing, we find that only Deputy Jason Preveau testified based on first-hand observations of the complaint regarding cars blocking the highway and obstructing the flow of traffic in the vicinity of V.J.'s. Deputy Jeffrey Westerfield testified that he did not personally observe any violation or disturbance in the vicinity of V.J.'s as described by the complainant, Kevin Williams.

10. Pursuant to SBP Ordinances, Ch. 3, Sec. 3–34(a)(4), "[a]ny person may file with the

alcohol beverage and bingo department a sworn petition requesting that a permit be suspended or revoked" and, upon receiving a sworn petition, the administrator of the alcohol beverage and bingo department shall notify the Council of the petition and provide a recommendation. The petition must set forth facts constituting a cause authorized by the SBP Ordinances and the petitioner must appear at the hearing to establish the allegations of the petition. SBP Ordinances, Ch. 3, Sec. 3–34(c).

numerous disturbances outside of V.J.'s from his house and from his mother's house (both located within the same block of Goodwill Drive as V.J.'s) on various occasions. The affidavit states, in pertinent part, as follows:

On each weekend, since the bar reopened [July 1, 2011], in front of VJ's Bar there are customers loitering in the street, and making noise in the street by yelling, cursing, fighting, breaking beer bottles, and playing loud music. They urinate outside of the bar and in property owner's [sic] yards. They park their cars blocking the street, then honk their horns trying to get out at 2 or 3 AM. We constantly hear obscene language. Customers come out of the bar and sit in their vehicles with loud obscene music playing in front of the bar. They do this while the bar is still open. No representative of the bar at any time has come from inside the bar to try to stop this unruly behavior.

* * *

On several occasions, the police were called, they came and requested that the noise be lowered, and nothing happened.

* * *

On Saturday nights this disturbance lasts until 1 AM on Sunday morning, and on Sunday nights it lasts until 3 AM Monday morning. This noise travels down the street and into our houses.

* * *

I hereby agree to appear at the St. Bernard Parish Council meeting to ask that the council [ ] revoke the alcohol license currently held by V.J.'s Hollywood Bar.

Along with his affidavit, Kevin Williams attached copies of four SBP Sheriff's Department incident reports that reference V.J.'s. In consideration that the Council referenced the incident reports as part of the notice to plaintiff of alleged violations, we provide a summary of the complaint within each incident report here:

(1) On July 1, 2011, Deputy Jason Preveau responded to a complaint from Fred Everhardt [a SBP Councilmember] of several vehicles parked on the side of Hwy LA 4, near V.J.'s, causing a traffic hazard. Deputy Preveau noted that he observed the complained of activity and discussed this complaint with plaintiff at V.J.'s.

(2) On July 4, 2011, Deputy Jeffrey Westerfield responded to a complaint from Kevin Williams of females fighting in the middle of the street on Goodwill Drive outside of V.J.'s. Deputy Westerfield noted that he did not observe any disturbance.

(3) On August 1, 2011, Deputy James Serpas responded to a complaint from Breanda Williams of people outside of V.J.'s yelling, cursing, and urinating on the wall of the bar. Deputy Serpas noted that he did not observe any disturbance and that V.J.'s was closed at the time he responded.

(4) On August 6, 2011, Deputy Randy Dabdoub responded to a complaint from Kevin Williams of loud music emanating from V.J.'s. Deputy Dabdoub noted that he talked with the complainant but he did not note any action taken.

Upon receiving the affidavit and the incident reports from Kevin Williams, the Administrator of the Alcohol Beverage and Bingo Department found the alleged complaints were violations of the following two SBP Ordinances:

Ch. 3, Sec. 3–27(5): Prohibited acts on premises—Enumeration

No person holding a retail dealer's permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the

following acts to be done on or about the licensed premises:

\* \* \*

(5) Permit any disturbance of the peace or obscenity, or any lewd, immoral, or improper entertainment, conduct or practices.

Ch. 20, Sec. 20–136: Parking not to obstruct traffic

No person shall park any vehicle upon a street, other than an alley, in such a manner or under such conditions as to leave available less than ten (10) feet of the width of the roadway for free movement of vehicular traffic.

As required by the applicable procedure for suspension or revocation,[11] the petitioner, Kevin Williams, appeared at the Council hearings and the district court trial to testify and establish the allegations in his affidavit. At the first Council hearing, on September 21, 2011, Kevin Williams presented a DVD of video footage that he allegedly recorded of the alleged violations occurring outside of V.J.'s. The Council viewed the DVD during the first hearing, but, upon learning that plaintiff had no prior knowledge of this DVD, the Council adjourned and continued the hearing date to allow plaintiff the opportunity to view the DVD. At the end of the December 19, 2011 hearing, Kevin Williams testified briefly and referenced the DVD as evidence of the parking problems, loud music, and disturbances occurring outside of V.J.'s. However, Kevin Williams' testimony did not provide any dates or specific information to establish the allegations in his affidavit or the complaints described in any of the SBP Sheriff's Department incident reports.

At the district court trial, Kevin Williams' testimony began with a generalized narrative of the problems he witnessed outside V.J.'s when it reopened in 2011, stating that there was "fighting, urinating all over the street," "cars jamming the street[,]" "people coming out of the bar, standing in the street, screaming and cursing at each other back and forward, calling each other names, all sorts of things." Kevin Williams did not provide any details of specific incidents or dates on which he witnessed these problems outside of V.J.'s, except to say that these problems occurred "almost every [night]" but "[m]ainly on Sundays."

As corroborating evidence of Kevin Williams' complaints, the Council introduced the DVD submitted at the Council hearings, and excerpts of the DVD were played during Kevin Williams' testimony.[12] Kevin Williams testified that the DVD showed video footage he recorded on his camcorder of the outside area of V.J.'s on several nights. In regard to whether the video depicts the problems he witnessed outside of V.J.'s, Kevin Williams testified that at one point in the video a man can be seen urinating on the wall outside of V.J.'s; he did not point out any other video footage of a specific incident or disturbance recorded outside of V.J.'s.

11. La. R.S. 26:93(D); SBP Ordinances, Ch. 3, Sec. 3–34(c).

12. Plaintiff's counsel objected to the admission of the DVD on the basis that there was no time stamp on the video recording and it went beyond the scope of the alleged violations for revocation. The district court admitted the DVD as photographic evidence subject to authentication by Kevin Williams that the video footage shows a fair and accurate representation of what he saw at the time it was recorded. Although he acknowledged that the camcorder did not include a time stamp on the video footage, Kevin Williams testified that the dates on which he recorded video are indicated by footage of the newspaper date. The dates indicated in this manner on the DVD include July 24, 2011; July 31, 2011; August 21, 2011; and August 28, 2011.

In regard to two SBP Sheriff's incident reports in which he is named as the reporting complainant, Kevin Williams testified that he called the police on July 4, 2011 to make a complaint of "fighting, disturbing the peace, yelling in the street;" and, on August 6, 2011, he called to complain about "loud music, urinating, fighting." Kevin Williams did not state whether any action was taken by the responding officer on either night.

When asked whether he ever spoke with plaintiff about these problems and whether plaintiff took any action to try and resolve the problems, Kevin Williams testified that he had talked to plaintiff when V.J.'s reopened about how to "try and solve these problems" but he opined that "I just think it was too much for [plaintiff], just too much for him, too much for the security guard." Kevin Williams acknowledged that plaintiff had hired a security guard for outside of the bar and "put up 'No Loitering' signs," but he stated that plaintiff's actions "[n]ever solved the problem."

The Council also presented the testimony of Elizabeth Williams, who testified at the December 19, 2011 Council hearing, and Earl Dauterive, who addressed the Council during the September 21, 2011 Council hearing.[13] Elizabeth Williams testified that she is Kevin Williams' mother; and she lives on Goodwill Drive, two houses down from V.J.'s. Elizabeth Williams described "the problems with the bar" in 2011 as "[t]he noise, the loud noise and the music and the cursing and everything in the street." Other than stating that she would hear the loud music and cursing in the streets from inside her house between 1 a.m. and 2 a.m., Elizabeth Williams did not testify regarding any other dates or details of specific incidents occurring outside of V.J.'s.

Earl Dauterive testified that he visited Kevin Williams' house on Goodwill Drive numerous times and he was familiar with the problems occurring outside of V.J.'s. Earl Dauterive testified about an incident on July 4, 2011, when he saw "some bar patrons walking from across the street in the bar and they were urinating on [Kevin] Williams's front lawn[,]" then two ladies came out from V.J.'s and "started fighting in the street, pulling each other's hair, cursing and throwing profanities all around." He stated that Kevin Williams called the police about the fighting, but by the time the police arrived the people in the street had disbursed. Earl Dauterive further testified that there was a problem with cars being parked on both sides of Goodwill Drive making it difficult to drive down the street.

Plaintiff also testified at both Council hearings and the district court trial. At trial, plaintiff testified that when he reopened V.J.'s in 2011, he retained security services, first from a retired SBP Sheriff's deputy and later from a security company called Global Protection. He arranged for a security guard to be present outside V.J.'s on Sundays, the most popular night at the bar, and he instructed the security guard not to allow patrons to loiter outside, to keep an eye on people outside, to call the police if there was a problem, and to ensure cars were not parked blocking the street. Plaintiff acknowledged that there had been a problem with parking outside V.J.'s, particularly on the night it reopened; he recalled that a police officer came to him and advised him that the patrons needed to move their cars. Plaintiff testified that he had attempted unsuc-

---

**13.** The record reflects that Earl Dauterive made a statement to the Council on behalf of Kevin Williams at the September 21, 2011 hearing, but it does not reflect that he provided sworn testimony.

cessfully to secure additional parking for the bar, but V.J.'s has not had any significant parking problem since the night it reopened. Plaintiff acknowledged that the DVD shows video footage of a man urinating outside of V.J.'s on the side of the building, but he testified that he has never permitted anyone to urinate outside. In regard to the alleged complaints within the four SBP Sheriff's Department incident reports, plaintiff testified that he had never been cited by the SBP Sheriff's Department in connection with any complaint about V.J.'s and no arrests had ever been made in or outside of V.J.'s. Furthermore, plaintiff testified that he had not received a citation for any type of violation, including an alcohol permit violation, prior to the revocation of his alcohol permit by the Council.

Following the presentation of evidence and testimony at trial, the district court did not hear arguments from the parties but provided a briefing schedule for the submission of post-trial briefs; the district court then issued its judgment and reasons for judgment prior to the date for submission of briefs.[14] In its reasons for judgment affirming the Council's revocation of plaintiff's alcohol permit, the district court stated as follows:

> The Court finds that the St. Bernard Parish Council was not in error in revoking Mr. Williams's alcoholic beverage permits. No evidence was presented that convinced the Court that the revocation was erroneous. Complaints related to

the bar were constant and without resolve.

Based on our review of the testimony and admissible, competent evidence presented by the Council at the district court trial, we do not find sufficient evidence to support the alleged violations that served as cause for the Council's revocation of the alcohol permits for V.J.'s. Furthermore, in our review of the record and the district court's reasons for judgment, there are no findings by the district court that the Council produced sufficient evidence of the alleged violations and cause for revocation. Thus, as argued by plaintiff in this appeal,[15] we find that the district court manifestly erred in affirming the Council's decision to revoke plaintiff's alcohol permit without determining that there was sufficient evidence to support the cause for revocation.

In *Brossette*, the Baton Rouge Alcoholic Beverage Control Board suspended Brossette's alcohol permit for a violation of Baton Rouge City Code Ordinance 8787 by operating his establishment in a manner reasonably anticipated to have an adverse effect on the public health, safety, or morals. 611 So.2d at 1392. In reversing the district court's judgment affirming the suspension, the Louisiana Supreme Court found that the competent evidence in the record revealed that there was one murder at Brossette's club, one serious fight, and numerous arrests in the vicinity, a high crime area; however,

---

**14.** Plaintiff's sixth assignment of error argues that the district court erred in issuing its judgment prior to the date set for the submission of post-trial briefs. We note that plaintiff does not provide any legal authority to support his argument and does not indicate any prejudice suffered as a result of the district court rendering judgment prior to the submission of post-trial briefs. Moreover, in consideration that we find reversible error on other

grounds, we pretermit discussion of this assignment of error.

**15.** Plaintiff's seventh assignment of error states that the district court erred in affirming the Council's decision to revoke plaintiff's alcohol permit without determining that plaintiff ever violated any SBP ordinance or state statute.

There was no evidence that Brossette committed, attempted, conspired, aided, abetted or encouraged anyone to commit any act adversely affecting the public health, safety, or morals. On the contrary, Brossette cooperated with the police, employed police protection for his Club and suffered from its location in a high crime area. Brossette acted as a police informant and tried to protect both his premises and his customers. Crime in the area was not a sufficient basis to close the Club.

The broad language of Section 6.A.1, Ordinance 8787, was not violated in any particular.

*Id.* at 1394.

In *Bibbins*, the City of New Orleans revoked the alcohol permit for Club Xscape based on violations of City Code Sec. 10-157(5), Sec. 10-157(19), and Sec. 10-157(22), "i.e., operating the establishment in a manner that permitted disturbance of the peace and/or created or maintained a public nuisance." *Id.*, 02-1510, p. 1, 848 So.2d at 689. Upon review of the district court's judgment affirming the revocation, this Court found "the City failed to carry its burden of proof by a preponderance of the evidence that the Club Xscape permitted a disturbance of the peace and/or created a public nuisance" on the dates of alleged violations. *Id.*, 02-1510, p. 24, 848 So.2d at 701. This Court noted that there was no evidence that Bibbins, the club owner, had committed or permitted anyone to commit any acts adversely affecting public safety; by contrast, this Court found:

> Ms. Bibbins has no control over individuals going under the interstate and getting weapons. The Club Xscape has taken precautions to ensure the safety of its patrons. Although Ms. Bibbins did not have the authority to direct traffic, she limited the number of customers inside the club as required. The club cannot be held accountable for ⌊₂₃the acts of third persons because the club is in the vicinity of criminal activity in a high crime area.

*Id.*, 02-1510, p. 23, 848 So.2d at 700-01. Consequently, this Court found that the district court manifestly erred in affirming the City's revocation of the alcohol permit for Club Xscape.

In this case, the Council alleged violations of SBP Ordinances Ch. 3, Sec. 3-27 or Ch. 20, Sec. 136. In revoking plaintiff's alcohol permit at the December 19, 2011 Council hearing, the Council stated the grounds for revocation as "health and safety standards relative to parking, disturbing the peace by sound, loitering, lewd, immoral, and improper, and illegal conduct." However, there was no competent evidence presented at the Council hearings or the district court trial to support a finding that plaintiff committed or permitted any alleged violation of SBP Ordinances Ch. 3, Sec. 3-27 or Ch. 20, Sec. 136.[16] The testimony and evidence presented did not establish the allegations and complaints made in Kevin Williams' petition/affidavit to revoke plaintiff's alcohol permit; the Council's witnesses provided generalized complaints without any corroborating evidence of specific incidents at V.J.'s constituting a violation by plaintiff of any SBP ordi-

---

**16.** As noted earlier in this opinion, two of the four SBP Sheriff's responding deputies who prepared the incident reports testified at the December 19, 2011 Council hearing. Upon review of that testimony, neither deputy testified that he issued a citation or observed any violation of the law that required further action. Thus, the testimony of those deputies was insufficient to establish that plaintiff committed or permitted a violation of a SBP Ordinance or state law.

nance or state law. By contrast, plaintiff produced evidence and testimony establishing that he had hired security for outside of V.J.'s, instructed security to prohibit loitering and improper parking, and cooperated with SBP Sheriff's deputies who responded to Kevin Williams' complaints. In addition, plaintiff testified that he had not received any citations from the SBP Sheriff's Department or the Louisiana ABC Board for violations of any SBP ordinance or state law. Thus, as in *Brossette* and in *Bibbins*, there was no competent evidence or testimony establishing that plaintiff committed, attempted, abetted, or permitted anyone to commit any acts in or near V.J.'s that adversely affected public health, safety, or morals.

Upon review of the competent evidence and testimony presented at the district court trial and in light of the applicable law and jurisprudence, we find the Council failed to carry its burden of proof by a preponderance of evidence of the alleged violations constituting cause for revocation, and we find the district court manifestly erred in affirming the Council's revocation of plaintiff's alcohol permit. Accordingly, we reverse the district court's judgment affirming the Council's decision; and we vacate the Council's decision to revoke plaintiff's alcohol permit.

### Additional Claims Raised in Plaintiff's Petition for Review

In this appeal, plaintiff also argues that the district court erred in not finding that the Council violated Louisiana's Open Meetings Law, La. R.S. 42:1 *et seq.*, and in not finding that the Council violated plaintiff's civil rights under 42 U.S.C. § 1982 and 42 U.S.C. § 1983. The district court's December 3, 2014 judgment was silent with regard to plaintiff's claims of Open Meetings Law violations and civil rights violations; however, "[i]t is settled law that the silence of the trial court on an issue raised by the pleadings and on which evidence was offered is to be taken as a rejection of that demand, in the absence of an express reservation." *Reed v. Verwoerdt*, 490 So.2d 421, 427–28 (La. App. 5th Cir. 1986), *quoting Serrate v. Serrate*, 472 So.2d 137, 138–39 (La. App. 5th Cir. 1985); *see Leary v. Foley*, 07–0751, p. 4 (La.App. 4 Cir. 2/13/08), 978 So.2d 1018, 1021 ("Silence in a judgment as to any part of a demand is construed as a rejection of that part of the claim."); *Leny v. Friedman*, 372 So.2d 721, 724 (La. App. 4th Cir. 1979). Since plaintiff offered evidence in support of these claims at the trial and since there was no express reservation within the judgment, the silence of the district court's judgment as to plaintiff's additional claims is taken as a rejection and dismissal of the claims.[17] Therefore, we review the record to determine whether the district court manifestly erred in its rejection of plaintiff's claim for the enforcement of the Open Meetings Law and his claims of civil rights violations by the Council.

### Open Meetings Law

Plaintiff's claim for the enforcement of the Open Meetings Law alleges that the Council violated provisions of the statute by entering into an executive session to discuss the revocation of plaintiff's alcohol permit.[18] The Open Meetings Law

---

**17.** We note that the district court's reasons for judgment briefly addresses plaintiff's claim of discriminatory treatment by the Council and the issue of the Council's executive session.

**18.** La. R.S. 42:25(C) provides that any person who has reason to believe that a public body has violated any provision of the Open Meetings Law, including those pertaining to executive sessions, or who has been denied any right conferred by the Open Meetings Law,

provides that every meeting of a public body, such as the Council, shall be open to the public unless otherwise provided by law. La. R.S. 42:14. While all final or binding decisions on public policy shall be made in open meetings, the Open Meetings Law permits public bodies to hold executive sessions "limited to matters allowed to be exempted from discussion at open meetings" as provided by La. R.S. 42:17. La. R.S. 42:16. Prior to entering into executive session, the reasons for holding the executive session must be stated on the record and recorded in the minutes along with the vote of each member on the question of holding the executive session. La. R.S. 42:16. In this case, plaintiff alleges that the Council's stated reason for holding the executive session does not fall within the specific ⌊26statutory exemptions provided for under La. R.S. 42:17; and, therefore, the Council's decision to revoke is null and void. In addition, plaintiff sought an award of attorney fees and costs of litigation for the violation. *See* La. R.S. 42:26(C).

On appeal, plaintiff argues that the district court erred in not allowing any testimony regarding the executive session and, thereby, prohibited plaintiff from establishing his claim of an Open Meetings Law violation. Plaintiff further argues that the district court's exclusion of any testimony regarding the executive session undermines the purpose of the Open Meetings Law.

The record of the district court trial reflects that plaintiff sought to present evidence of the Open Meetings Law violation by introducing testimony from Wayne Landry, a member of the Council in 2011

when the Council voted to revoke plaintiff's alcohol permit. Wayne Landry testified that he was present at the Council hearings concerning the revocation of plaintiff's alcohol permit, and he recalled that an executive session was held during the hearing to revoke. But when plaintiff's attorney asked questions regarding what occurred during the executive session and whether the Council's reason fell under the exemptions of the Open Meetings Law, the Council's attorney objected on the grounds that the Council went into the executive session with the SBP attorney and the ensuing discussions were privileged by the attorney-client relationship. The district court sustained the objection and excluded any testimony regarding what occurred in the executive session. The district court stated that plaintiff would be allowed to proffer Wayne Landry's testimony for the record, but the district court would not hear any testimony about an executive session. Thereafter, plaintiff failed to proffer the testimony of Wayne Landry as allowed by La. C.C.P. Art. 1636.

⌊27In *Ritter v. Exxon Mobile Corporation*, 08–1404, p. 9 (La.App. 4 Cir. 9/9/09), 20 So.3d 540, 546, this Court explained the implications of failing to proffer evidence ruled inadmissible by the district court, stating:

It is well settled that 'evidence not properly and officially offered and introduced cannot be considered, even if physically placed in the record. Documents attached to memoranda do not constitute evidence and cannot be considered as such on appeal.' *Denoux v. Vessel Management Services, Inc.,*

may institute enforcement proceedings. In an enforcement proceeding, the remedies which the plaintiff may seek and the court may grant include (1) a writ of mandamus; (2) injunctive relief; (3) declaratory judgment; (4) judgment rendering the action void; and (5) judg-

ment awarding civil penalties as provided in La. R.S. 42:28. La. R.S. 42:26(A). In addition, a person who brings a successful enforcement proceeding shall be awarded reasonable attorney fees and other costs of litigation. La. R.S. 42:26(C).

2007–2143 (La. 5/21/08), 983 So.2d 84. When the trial judge rules the evidence inadmissible, a proffer (offer of proof) can be made. La. C.C.P. art. 1636. It is incumbent upon the party who contends his evidence was improperly excluded to make a proffer, and if he fails to do so, he cannot contend such exclusion is error. *Grusich v. Grusich*, 447 So.2d 93 (La. App. 4 Cir. 1984).

*See Hightower v. Schwartz*, 14–0431, p. 8 (La.App. 4 Cir. 10/15/14), 151 So.3d 903, 907 ("[W]hen a party fails to proffer the testimony, it is precluded from complaining about the testimony's exclusion."); *Mazzini v. Strathman*, 13–0555, pp. 4–5 (La.App. 4 Cir. 4/16/14), 140 So.3d 253, 256–57; *see also McLean v. Hunter*, 495 So.2d 1298, 1305 (La. 1986) (Explaining that the purpose of requiring a proffer is to preserve excluded testimony so that it is available for appellate review).

In consideration of plaintiff's failure to proffer Wayne Landry's testimony after the district court excluded it, we need not address whether, or why, the district court's ruling to exclude that testimony was erroneous. Plaintiff's failure to proffer the excluded testimony precludes him from complaining to us on appeal about its exclusion. Moreover, plaintiff did not present any other evidence or testimony in support of his claim of an Open Meetings Law violation by the Council. Consequently, we affirm the district court's rejection of that claim.

### Civil Rights Claims

Finally, we address the district court's rejection of plaintiff's claims of civil rights violations by the Council. In his supplemental petition, plaintiff asserted civil rights claims under 42 U.S.C. §§ 1982 and 1983, alleging that the Council intentionally discriminated against plaintiff and committed equal protection and due process violations in its enforcement of alcohol permit laws and ordinances. On appeal, plaintiff argues that the district court erred in not finding any civil rights violations by the Council.

From our review of the record, we find that plaintiff offered insufficient evidence or testimony to establish a prima facie case for his claims of civil rights violations under 42 U.S.C. §§ 1982 or 1983.[19] In support of his civil rights claims, plaintiff introduced into evidence a copy of his petition to the Council requesting that the alcohol permits for several bars located in SBP be suspended or revoked on the basis that each had received citations from the Louisiana Alcohol and Tobacco Control Board ("ATC Board"). Plaintiff also proffered his affidavit with attached copies of public records from the ATC Board documenting violations by the bars named in plaintiff's petition to the Council. In addition, plaintiff testified in support of his claims.

Plaintiff argues that the district court prohibited him from presenting evidence and testimony in support of his civil rights claims, but we find that the record reflects plaintiff was allowed to present evidence

---

**19.** To prevail in a civil rights action under 42 U.S.C. § 1982, the plaintiff must show that defendant had a racially discriminatory intent to deprive plaintiff of his right to "inherit, purchase, lease, sell, hold, and convey real and personal property." *See Zuyus v. Hilton Riverside*, 439 F.Supp.2d 631, 636 (E.D. La. 2006); *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001). To prevail in a civil rights action under 42 U.S.C. § 1983, the plaintiff must prove that conduct occurred under color of state law and that conduct deprived plaintiff of a right, privilege, or immunity secured by the U.S. Constitution or federal law. *Moresi v. State Through Department of Wildlife and Fisheries*, 567 So.2d 1081, 1084 (La. 1990).

and testimony in support of those claims. We note that the district court sustained objections to plaintiff's testimony regarding his knowledge of any enforcement action taken by the Council against other alcohol permit holders in SBP, but we find no error in the district court's ruling that the questions directed by plaintiff's attorney called for speculation. The record reflects that plaintiff's attorney did not continue any line of questioning with regard to plaintiff's civil rights claims.

Based on our review of the record, we find that plaintiff presented insufficient evidence and testimony to establish a claim for a violation of plaintiff's civil rights by the Council under 42 U.S.C. §§ 1982 or 1983.[20] Accordingly, we find no merit in plaintiff's arguments that the district court erred in finding no civil rights violations by the Council and we affirm the district court's rejection of those claims.

## CONCLUSION

For the foregoing reasons, we reverse the district court's December 3, 2014 judgment affirming the Council's decision to revoke plaintiff's alcohol permit for V.J.'s and we vacate the Council's revocation of plaintiff's alcohol permit. In regard to plaintiff's claims of an Open Meetings Law violation and civil rights violations that were dismissed by the district court's judgment, we affirm.

**REVERSED IN PART; AFFIRMED IN PART.**

TOBIAS, J., CONCURS IN THE RESULT AND ASSIGNS REASONS.

**20.** *Cf. Anderson v. Pass Christian Isles Golf Club, Inc.,* 488 F.2d 855, 857 (5th Cir. 1974) (finding that the unchallenged testimony of three black men that they were rejected from using golf club's facilities because of their

TOBIAS, J., CONCURS IN THE RESULT AND ASSIGNS REASONS.

I respectfully concur in the result reached by the majority. I write separately to emphasize, *inter alia*, that the trial court was required to try the plaintiff's case *de novo* rather than to either (a) give deference to the decision of the St. Bernard Parish ("SBP") Council and/or (b) accept the evidence received before the Council as admissible for all purposes in her trial.

La. R.S. 33:4788, relative to appeals such as that before us, states:

The holder of the permit who is aggrieved by a decision of the governing body of the municipality or parish or a municipal alcoholic beverage control board to suspend or revoke his permit, may within ten days of the notification of the decision take a devolutive appeal to the district court having jurisdiction of his place of business and **on such appeal the trial shall be de novo.** Within ten calendar days from the signing of the judgment by the district court the municipality or parish governing authority, a municipal alcoholic beverage control board or the holder of the permit, as the case may be, may devolutively appeal from the judgment of the district court to the court of appeals as in ordinary civil cases. [Emphasis supplied.]

By law, a local governmental entity such as the SBP Council has the authority to holding a hearing to determine whether an alcoholic beverage outlet's permit or license to sell alcoholic beverages should be revoked. At the hearing, which requires notice and other constitutional protections of due process, the local governing authori-

race along with club employee's testimony that he excluded such individuals pursuant to instructions from the board of governors created a prima facie case of racial discrimination under 42 U.S.C. §§ 1981, 1982.)

ty ("LGA") hears evidence as to violations of laws and ordinances by the licensee. The evidence received at the LGA hearing, however, is not governed by the Louisiana Code of Evidence. The LGA may receive hearsay evidence, and the evidence it receives may or may not necessarily be received under oath. Such hearsay evidence may not necessarily be admissible at a trial, but is only probative of that which the LGA is considering. If the LGA votes to revoke or suspend the licensee's license, that decision becomes binding upon the licensee unless the licensee timely appeals the LGA's decision to a district court.

If the appeal is timely filed, the licensee is entitled to a trial *de novo*. At that trial, only evidence governed by the Louisiana Code of Evidence may be received. Unless the parties stipulate to the contrary, the evidence received before the LGA must be testified to again in court, under oath; documents must be properly authenticated before being admitted.[1] Following receipt of the evidence, the trial court renders a decision based upon the evidence received at trial, not on the evidence received before the LGA. By virtue of a trial *de novo*, the trial court gives no deference to the LGA's decision.

The LGA's decision's primary use is to establish that due process (a hearing) was afforded the licensee before the LGA rendered its decision. Thus, I respectfully disagree with the majority's determination that the trial court erred in receiving transcript and documents from the SBP Council's hearing. The evidence from the hearing was admissible, but only for the limited purpose of establishing that the LGA adhered to law and afforded the licensee a hearing. The evidence received at the LGA

hearing, absent a stipulation by the parties, has no evidentiary value and cannot be considered as substantive by the trial court in rendering its decision.

In the case at bar, inadequate admissible evidence, as discussed by the majority, was presented to establish that the licensee's license should be revoked. Thus, the majority does not err in reversing the trial court and rendering judgment for the plaintiff, Vernon Williams.

## I.

La. C.C.P. Art. 1636 states:

A. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.

B. At the request of any party, the court may allow any excluded evidence to be offered, subject to cross-examination: on the record during a recess or such other time as the court shall designate; or by deposition taken before a person authorized by Article 1434 within thirty days subsequent to the exclusion of any such evidence or the completion of the trial or hearing, whichever is later. When the record is completed during a recess or other designated time, or by deposition, there will be no necessity for the requesting party to make a statement setting forth the nature of the evidence.

C. In all cases, the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.

---

1. By way of example, although police reports are inadmissible at a trial in court, they may be admissible at an administrative hearing such as a hearing before the SBP Council. *See*

La. C.E. Art. 803(8)(b)(i) and (iv). Thus, at the trial herein, the sheriff's deputies who testified were required to testify; the reports that they prepared are inadmissible.

D. If the court permits a party to make a complete record of the evidence held inadmissible, it shall allow any other party the opportunity to make a record in the same manner of any evidence bearing upon the evidence held to be inadmissible.

At trial, the plaintiff's counsel attempted to present evidence that the SBP Council violated Louisiana's Open Meetings Law in its executive session. The trial court refused to receive the evidence, agreeing with the defendant that the communications between the SBP Council members and its attorney was subject to the attorney-client privilege. Although the trial court allowed the plaintiff to proffer the evidence, the plaintiff failed to do so. It is unclear to me, however, what the proffer in this case would be. Wayne Landry, whose testimony was at issue, would have started to explain in the proffer what went on in the executive session and defense counsel would have once again objected that such information was subject to the attorney-client privilege. At that point, it is more likely than not that Mr. Landry would ceased to testify in the proffer. One might say that to proceed with the proffer would have been a vain and useless effort and that the plaintiff's failure to make a formal proffer (making same part of the record for appeal) was unnecessary. However, contrariwise, reasonable minds might say that plaintiff was obligated to *attempt* the proffer once the court gave plaintiff the opportunity to do so. The majority concludes that plaintiff was obligated to make the attempt. I am not convinced that the attempt was necessary. However, given the unusual factual circumstances presented in this case, I cannot say to an absolute certainty that the majority is wrong.

## II.

Finally, I find that the trial court was not required by law to await memoranda from the parties' counsel before rendering a decision on the merits of the plaintiff's case. A trial court may render a decision at any point once the evidence is received and submitted for decision; memoranda of counsel are not required.