611 So.2d 1391 (1993)
John Henry BROSSETTE d/b/a the Old Five Crown Social Club
v.
ALCOHOLIC BEVERAGE CONTROL BOARD, et al.
No. 92-C-1758.
Supreme Court of Louisiana.
January 19, 1993.
Rehearing Denied February 18, 1993.
*1392 Ben N. Hamilton, Baton Rouge, for applicant.
William Michael Stemmans, James Leslie Hilburn, Lynn E. Williams, Baton Rouge, for respondent.
WATSON, Justice.[*]
The issue is whether a six months' suspension of John Henry Brossette's liquor license was supported by sufficient evidence.

FACTS
John Henry Brossette, d/b/a The Old Five Crown Social Club, was charged with violating Ordinance 8787 of the Baton Rouge City Code by operating his establishment in a manner reasonably anticipated to have an adverse affect on the public health, safety or morals.
At the hearing, hearsay evidence was admitted, despite the objection of Brossette's attorney. Various police officers testified primarily about what they had been told by others.
Wayne Rogillio, City of Baton Rouge Chief of Police, said that the Club, located at 1222 Eddie Robinson Drive, was in a high crime area. He had received 102 complaints for that block of Eddie Robinson Drive, although they did not specify the Club's street address. Chief Rogillio asked the Alcoholic Beverage Control Board to consider closing the Club.
Brossette employed off-duty police officers from December of 1987 until April of 1988. A police department internal rule then prohibited the officers from working where alcoholic beverages were sold. The new rule, subject to exceptions by the Chief, was primarily based on fear of liability.
Officer Laurice Teague responded to several calls from the Club. One, on September 1, 1988, involved aggravated assault and attempted second degree murder. Two women had an altercation which continued out into the Club's parking lot. Patricia Jones was arrested a couple of blocks away with a gun on the floorboard of her car.
Other calls involved possession with intent to distribute cocaine. On February 9, 1989, Teague and another officer saw what appeared to be a drug transaction by the front door of the business. The resulting charges had not gone to trial at the time of the hearing. On February 25, 1989, a person was arrested during a parking lot struggle in which a bag of cocaine was dropped. That case also had not gone to trial.
Detective Ben Odom was advised of cocaine at the Club and found three clear plastic bags containing three ounces of cocaine. Brossette had told the police about the cocaine.
Sergeant Michael J. Dickinson saw a young woman wheeled out of the Club and placed in an ambulance after being shot once in the chest. The woman, Gladys Joseph, was dead on arrival at Our Lady of the Lake Hospital. Brossette had heard that Gladys Joseph was involved in dealing cocaine. After that murder, Brossette installed a metal detector, which was effective in screening guns, knives and brass knuckles.
Patrolman Donald Greene said Pamela Kennedy complained about having her jewelry stolen and seeing nude dancing at the Club in a "butt contest". Brossette explained that the dancers were doing "the butt," a nationally popular dance, and wore body tights.
Officer Charles T. Fairburn said that there had been a fight at the Club, which was in a bad neighborhood and attracted bad people.
Officer Carolyn Reed investigated an alleged assault, where an armed employee chased a customer out of the Club. The customer had a fight with his seventeen-year-old *1393 girlfriend. (The incident was not reported for three days.)
Detective Keith Bauer testified about a fight at the Club, which resulted in the two antagonists being hospitalized.
John C. Welborn, Jr., senior legal investigator for the Alcoholic Beverage Control Board of East Baton Rouge, went through 102 reports to find the more serious charges, those presented at the Board's hearing. According to Wellborn, there was serious criminal activity at Brossette's place of business. Jessie Woodside, who lived across the street, said shots had been fired in the vicinity, which Woodside assumed came from the Club.
Weldon C. Gaines testified that he had known John Brossette about 20 years, the same period of time that Brossette had owned the Club. Gaines was a frequent visitor to the Club, which he regarded as one of the finest in the City. When Brossette employed off-duty policemen on his premises, he had no difficulties. He paid seven hundred dollars ($700.00) a week for that protection.
Officer Leo Keller testified that he had worked off duty at the Club until that type of work was forbidden. He had made two or three arrests but had never witnessed any drug transactions or shootings. In his opinion, the presence of the police deterred criminal activity.
John Brossette testified that he had reopened The Five Crown Social Club in November of 1987. He had owned the property over 20 years. He talked to Lieutenant Mose Evans, Sr. about police protection for the parking lot. He paid each of the officers fifty dollars ($50.00) a night, and they kept the area free of drug dealers. The Club accommodates 265 people on the first floor and up to 400 people on the second floor. On an average night, Brossette had between 175 and 250 customers. He employed his own security guards inside the Club, which had been in Baton Rouge over 50 years. It is the oldest black club in the City, operating since 1935.
There was a motion to suspend Brossette's license for 12 months and a substitute motion to suspend it for 6 months. By a vote of 4 to 3, the substitute motion carried.
Brossette appealed to state district court. The trial court affirmed the suspension and assessed costs to Brossette. In reasons for judgment, the trial judge stated that his review was not a trial de novo, but a determination that the findings of the Alcoholic Beverage Control Board were supported by the record.
The court of appeal affirmed in an unpublished opinion, holding that the applicable law, Section 6.A.1(10) of Ordinance No. 8787, is not unconstitutionally vague and the suspension of Brossette's license was not manifestly erroneous. 601 So.2d 37 (La.App. 1st Cir.1992). A writ was granted to consider the judgment. 604 So.2d 1298 (La.1992).

LAW
Baton Rouge had a home rule charter when the Constitution of 1974 came into force. See City of Baton Rouge v. Mahnken, 260 La. 1002, 257 So.2d 690 (1972). Article 6, Section 4, of that Constitution provides that local governmental subdivisions with home rule charters retain their existing powers, functions and duties and have those granted to other local governmental subdivisions. Under its home rule charter, Baton Rouge had the right to establish an alcoholic beverage control board. See Francis v. Morial, 455 So.2d 1168 (La.1984).
Under Baton Rouge Ordinance 8787, Section 6.A.1, an alcoholic beverage permit holder on licensed premises is not allowed to:
Commit, attempt, conspire, aid, abet or encourage any persons to commit any acts or things prohibited by this ordinance, by the East Baton Rouge Code, by the provisions of any applicable Louisiana Revised Statutes or laws, or applicable laws of the United States or any *1394 other country, pertaining to: (1) any alcoholic beverages as described in Section 1.A. herein, (2) any illegal distribution or intent thereof of any Controlled Dangerous Substance, (3) soliciting for prostitution, (4) pandering, (5) letting premises for prostitution, (6) gambling, (7) letting premises for gambling, (8) contributing to the delinquency of juveniles, (9) keeping a disorderly place, or (10) any act which might adversely affect the public health, safety or morals.
The Alcoholic Beverage Control Law, LSA-R.S. 26:1, et seq., provides for both state and local permits. See LSA-R.S. 26:78. However, permits cannot be suspended except for the causes specified in that Chapter. LSA-R.S. 26:94. Permits may be suspended or revoked for violation of municipal ordinances authorized by that Chapter. LSA-R.S. 26:91(5)(c).
At the Board hearing, the police officers repeated other parties' complaints to prove that Brossette's club was the location of criminal activity. Investigative reports by police are subject to the hearsay rule. LSA-C.E. art. 803(8)(b)(i). The Authors' Comments point out that complaints of crime made to the police are not admissible evidence, being hearsay within hearsay.
Brossette was entitled to a district court trial de novo under LSA-R.S. 33:4788. See P & G Retailers, Inc. v. Wright, 590 So.2d 1272 (La.App. 1st Cir. 1991). At that trial, the hearsay evidence at the Board hearing should have been excluded.
Because the suspension affects Brossette's right to obtain future permits, expiration of the six months' period does not render the matter moot. See LSA-R.S. 26:103 and Breaux v. Town of Oberlin, 247 So.2d 195 (La.App. 3d Cir.1971).

CONCLUSION
Although Brossette was entitled to a de novo hearing in the trial court, his attorney "consented to the disposition of the matter on the basis of the record and memoranda". (Brief filed on behalf of Brossette in the Court of Appeal, First Circuit.) However, the trial court's review of the record had to be limited to the competent evidence.
There was one murder at the Club and one serious fight. There were numerous arrests in the vicinity, a high crime area. There was no evidence that Brossette committed, attempted, conspired, aided, abetted or encouraged anyone to commit any act adversely affecting the public health, safety or morals. On the contrary, Brossette cooperated with the police, employed police protection for his Club and suffered from its location in a high crime area. Brossette acted as a police informant and tried to protect both his premises and his customers. Crime in the area was not a sufficient basis to close the Club.
The broad language of Section 6.A.1, Ordinance 8787, was not violated in any particular. It is therefore unnecessary to consider the allegation that the Ordinance is unconstitutionally vague.
Because there was an inadequate legal basis to suspend Brossette's permit, Brossette was erroneously assessed with costs.
For the foregoing reasons, the judgment of the court of appeal is reversed; the six-month suspension ordered by the Baton Rouge Alcoholic Beverage Control Board is vacated; and costs are taxed to defendant insofar as provided by law.
REVERSED.
MELVIN A. SHORTESS, J., agrees with the majority opinion & adds concurring reasons.
SHORTESS, Judge, concurring.
I agree with the majority opinion and further note that the dissenting judge below astutely observed that it was "unfortunate both for Mr. Brossette and the surrounding community that his place of business *1395 became the site of criminal activity by third persons; however, that circumstance is not enumerated as a basis for revoking a license under the Wine, Beer and Liquor Ordinance." (Emphasis mine.)
I respectfully concur.
NOTES
[*] Judge Melvin A. Shortess of the First Circuit Court of Appeal sitting in place of Justice Cole.