Judgment rendered April 13, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,431-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

IN RE: REVOCATION OF AN ALCOHOLIC BEVERAGE PERMIT FOR
RITEWAY LIQUOR STORE, 1750 MARTIN LUTHER KING DRIVE
SHREVEPORT, LA 71107

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 626,167

Honorable Ramon Lafitte, Judge

* * * * *

| | |
|---|---|
| WEEMS, SCHIMPF, HAINES, SHEMWELL & MOORE, APLC By: Kenneth Patrick Haines | Counsel for Appellants, Hasan Awad, Riteway Liquor Store, and Baydoun Liquor Mart |
| LAW OFFICES OF J. DHU THOMPSON, APLC By: J. Dhu Thompson | |
| MAYER, SMITH & ROBERTS, LLP By: Marcus Edwards | Counsel for Appellee, City of Shreveport |
| CASTEN & PEARCE, APLC By: Brian David Smith | |

* * * * *

Before MOORE, STONE, and THOMPSON, JJ.

**THOMPSON, J.**

After a unanimous vote by its city council, the City of Shreveport revoked the alcohol beverage permit of a liquor store on the grounds it presented a consistent, significant danger to the surrounding area from frequent criminal activity, including but not limited to fights, drug sales, shootings, and homicides on the premises. The Shreveport Chief of Police described the location as one of the most dangerous places in Shreveport. The owner and operator of the business sought judicial review of that revocation. After a *de novo* trial, during which several witnesses and police officers testified to the danger presented by the liquor store, the trial court affirmed the City Council's revocation of the permit. The owner again appealed. For the reasons more fully set forth below, we affirm the trial court's judgment.

## FACTS

The City of Shreveport issues alcoholic beverage permits for the sale of alcoholic beverages within its city limits. To maintain that permit in good standing, permit holders are required to meet certain minimum standards. In this matter, on March 3, 2020, the Chief of the Shreveport Police signed a letter to the City Council recommending the revocation of the alcoholic beverage permit for Riteway Liquor Store, located at 1750 Martin Luther King Drive in Shreveport, Louisiana, which is owned and operated by Hasan Awad ("Awad") and Baydoun Liquor Mart d/b/a Riteway Liquor ("Riteway"). With the letter, he included a petition with the signatures of over 100 residents of the neighborhood. The letter was signed by the police chief, the mayor, and the city attorney and indicated that in a 14-month

period from 2018-2019, there had been over 100 service calls to the Shreveport police department for that location, including two homicides and complaints of open-air drug sales. Prior to the current ownership, there had been fewer than 20 calls for service in a five-year timeframe. The letter included the recommendation by the chief that the alcoholic beverage permit be revoked. The letter also stated that the business had committed prohibited acts listed in City Ordinance 10-102.

A notice of hearing was mailed on August 17, 2020, and the meeting was postponed to September 22, 2020 at Riteway's request. At the City Council meeting, the council heard testimony from Awad, several police officers, and residents of the Martin Luther King neighborhood. It also considered records of service calls submitted by the police department. The council voted 7 to 0 to accept the recommendation of the Chief of Police and revoke Riteway's alcoholic beverage permit. Thereafter, the City of Shreveport (the "City") revoked the permit. On September 24, 2020, Awad and Riteway petitioned for judicial review and injunctive relief from the City's revocation.

A *de novo* trial was held in the First Judicial District Court of Caddo Parish, Louisiana on April 20, 2021. The court accepted into evidence the video depositions of Shreveport Police Chief Ben Raymond and Major Stephanie Thomas. Major Stephanie Thomas ("Major Thomas") testified that her cousin, Cortez Woods, was killed at Riteway in 2019. Major Thomas is the guardian of her cousin's son and is in favor of the revocation of Riteway's permit. Chief Raymond testified that he attended a neighborhood forum where the citizens of the neighborhood sought to have

Riteway closed. Chief Raymond stated that although Riteway is in a high-crime area, a high number of calls for service had been reported at the Riteway compared to other businesses. Chief Raymond testified that Riteway is one of the most dangerous places in the City of Shreveport and is known for open air drug sales. Chief Raymond recommended that Riteway's permit be revoked.

Antoinette Needham ("Needham") testified that her cousin, Jeremiah Davenport, was murdered outside of Riteway in 2017 or 2018. Needham helped organize obtaining signatures on a petition to revoke Riteway's alcoholic beverage permit and spoke at the City Council meeting about the revocation. Needham not only wanted Riteway's permit revoked, she also wanted the entire establishment shut down.

Irma Rogers ("Rogers") testified that she is the president of the Martin Luther King Development Organization, a neighborhood organization that runs multiple programs for citizens in the community. She helped Needham circulate the petition to the members of the community organization. She spoke to the city council and asked them to revoke Riteway's permit. Rogers testified that she had reports from her members of the large number of people who hang out around Riteway and of the noise they consistently generate. Rogers testified to her personal knowledge of two people being murdered on the Riteway premises in the past few years.

Sergeant James Cisco ("Sgt. Cisco") of the Shreveport Police department testified that he is Sergeant over the Alcoholic Beverage Control Office, which regulates all of the sale of alcohol within the city limits. Sgt. Cisco testified that he assisted Alcohol and Tobacco Control, a state agency,

3

with the investigation of the sale of alcohol to an underage person at Riteway, and he had received complaints of loitering in the Riteway parking lot. Sgt. Cisco testified that the sale of alcohol to a minor is a violation of Riteway's alcoholic beverage permit. Sgt. Cisco testified that there is a regulation stating that the owner is responsible for his property inside and outside, including the parking lot. Finally, Sgt. Cisco testified that he was notified by the homicide department that Awad was not cooperating with security cameras under city law. Sgt. Cisco testified that even after speaking to Awad about security cameras, calling the police, and hiring security, Awad had not done so and a fight had broken out on the premises. He testified there had been complaints of drug use and confirmed that Riteway is located in a high-crime area.

Corporal Carlos Glass-Bradley ("Cpl. Glass-Bradley") testified that he works in the Alcohol Beverage Ordinance office of the Shreveport police. He personally coordinated the investigation into Riteway's alcoholic beverage permit. He explained that calls for service are calls to 911 or the police from a certain location or a person or business. The difference between a service call and an offense call is that a service call does not result in a report documented and an offense call is a major event that needs to be well documented. Cpl. Glass-Bradley testified about the report he prepared for Chief Raymond and the City Council regarding service calls and offense calls. Cpl. Glass-Bradley testified that he determined that Riteway was a major public safety concern, based on his investigation. For an 18-month period, there were 102 service calls. He testified that he looked at another liquor store in a high crime area, and it received only 4 service calls in as

4

many months. In that 18-month time period, Cpl. Glass-Bradley's investigation revealed there had been four shootings.

Cpl. Glass-Bradley further testified that he had been a part of an investigation that determined that Awad had been operating another business in city limits without a proper permit. Cpl. Glass-Bradley testified that selling alcohol without a permit or by an employee without an ABO card, selling alcohol to a minor, allowing crowds to loiter at the business, and allowing patrons to drink on premises are all violation of the City's ordinances. Cpl. Glass-Bradley testified that there was another liquor store in the area with more service calls but the Riteway calls involved violence, and thus, Riteway was a more serious public safety concern. He recommended that Riteway's alcoholic beverage permit be revoked.

Awad testified that the sale of alcohol to an underage person charge was dismissed and not prosecuted. Awad stated that he told community organizers that he would hire a security guard, add security cameras, post signs and take other measures on weekends when there was an increase in the volume of his business. Awad testified that he had been making calls for service for loitering, as instructed by Cpl. Glass-Bradley. Awad testified that he never aided in the commission of a crime or intentionally allowed people to loiter on his premises. Awad stated that he signed an affidavit asserting that he would use security cameras, reduce his hours of operation, and install a security guard. However, he confirmed that he had not hired a security guard and, instead, believed all of his employees were security guards. When asked specifically by his attorney if he had hired a security guard for the door, Awad answered affirmatively. However, upon

questioning by the trial court, he testified that the security guard was actually just an employee.

In its reasons for judgment, the trial court summarized the live testimony taken at trial and stated that it reviewed the DVD of the City Council meeting, noting that there were 102 service calls to Riteway in an 18-month period. The court also noted that there had been two homicides, four shootings, two armed robberies, two narcotics arrests, five assaults and batteries, and two underage sales, based on the testimony at the City Council meeting. The court noted that the City Council voted to unanimously revoke Awad and Riteway's alcoholic beverage permit. The trial court noted that it was alarming there had been so many service calls and so much criminal activity at the location. The court noted that:

> After telling the City Council that he was willing to hire security in September, we come to trial in April, seven months later, he still had not hired any security. He has not made any efforts to curb the crime at his location. It appears to the Court that he is not willing to hire security unless ordered to do so. If I don't order him to hire security, he will not hire security and crime will continue. This activity does not show concern for the MLK area. As such, it is the ruling of the Court that his license be revoked.

The court later noted that if Awad had hired security, then crime would have gone down and the court probably would not have revoked the permit. The trial court affirmed the City's decision to revoke the alcoholic beverage permit. Riteway filed a motion and order for appeal, requesting that the execution of the judgment be stayed pending appeal. A hearing on the request for stay was held on June 22, 2021, and the stay was denied by the trial court. This appeal followed.

6

## DISCUSSION

On appeal, Awad and Riteway assert three assignments of error:

**First Assignment of Error: The district court committed legal error by allowing the City of Shreveport to proceed on its petition to revoke an alcohol permit without proper notice.**

In their first assignment of error, Awad and Riteway argue that they were not given proper notice of the meeting of the City Council to consider rescinding Awad and Riteway's alcoholic beverage permit, citing La. R.S. 33:4787, which states:

> A notice shall be served upon the holder of the permit stating the time and place of the hearing to be held by the governing body of the municipality or parish, or a municipal alcoholic beverage control board which shall be not less than ten calendar days from the date such notice is given. **The notice shall enumerate the cause or causes for suspending or revoking the permit**, and shall be sent by registered mail to the holder of the permit at the address of his place of business as given in his application for the permit, or may be served on him in person by an officer or employee of the municipality or parish. Any trade organization consisting of brewers and distributors of beverages of low alcoholic content, through its authorized representative, may file with the governing body of any municipality or parish, or a municipal alcoholic beverage control board a sworn petition requesting that a permit be suspended or revoked, and the procedure in such cases shall be the same as herein set out.

(emphasis added). Awad and Riteway argue that the notice provided to them was overly broad and did not provide specificity as to which ordinance violations it should be prepared to defend at the City Council meeting.

The record reflects that written notice was sent to Awad and Riteway on August 17, 2020 by mail. The letter states that the chief of police has notified the City Council that Riteway did not meet all of the qualifications to hold a liquor permit as outlined in Section 10-102 of the Code of Ordinances of the City of Shreveport. The letter specifically quotes sections

(a)(1), (a)(2), and (a)(10), which enumerate potential violations for the sale of alcohol to underage persons, the sale of alcoholic beverages to an intoxicated person or allowing any person under the influence to be on the premises, and permitting the sale or consumption on or about the licensed premises of any kinds of narcotics or habit-forming drugs.[1]

Legal findings are reviewed under the *de novo* standard. *City of Shreveport v. CenturyTel Solutions, LLC*, 54,159 (La. App. 2 Cir. 11/17/21), 332 So. 3d 229. Appellate review of a question of law, which is *de novo*, is simply to determine whether the trial court was legally correct or legally incorrect. *Id.*

We find no legal error in the trial court allowing the City to proceed on its petition to revoke this alcoholic beverage permit. The notice sent by the City provided Riteway with three specific alleged violations of Section 10-102(a) of the Code of Ordinances, including the sale of alcohol to minors, allowing intoxicated people on the premises, and permitting the sale or consumption of illegal drugs on or about the premises. This notice is

---

[1] Sec. 10-102(a): No person holding a retail dealer's permit and no agent, associate, employee, representative, or servant of any such person shall do or permit any of the following acts to be done on or about the licensed premises:
(1) Sell or serve alcoholic beverages to any person under the age of 21 years, unless such person submits a driver's license, selective service card or other lawful identification which, on its face, establishes the age of the person as 21 years or older. No form of identification mentioned above shall be accepted as proof of age if it is expired, defaced, mutilated or altered. If the driver's license, state identification card or lawful identification submitted is a duplicate, the person shall submit additional identification which contains the name, date of birth and photograph of the person. In addition, an educational institution identification card, check cashing identification card, or employee identification card shall not be considered as lawful identification for the purposes of this paragraph.
(2) Sell or serve alcoholic beverages to any intoxicated person or, if the retail dealer's permit is for consumption off the premises only, allow any person under the influence of alcohol or any illegal drug to be on the premises.
(10) Illegally sell, offer for sale, possess or permit the sale and/or consumption on or about the licensed premises of any kind or type of narcotics or habit-forming drugs. If notified of illegal activity on the premises, it is the owner/manager's responsibility to ensure the activity ceases.

sufficient to put the permit holder on notice as to the allegations against it and to prepare its defense thereto. This assignment of error is without merit.

**Second Assignment of Error: The district court committed legal error by failing to require the City of Shreveport to prove that the "bad acts" alleged to have been committed on the Riteway Liquor premises were attributable to the alcohol permit holder.**

Awad and Riteway argue that that none of the evidence presented by the City established its burden of proof linking the alleged problems of Riteway's premises to Awad or a representative of Riteway. Awad and Riteway cite Section 10-102(a) of the city ordinances and contend that the City failed to establish a causal link between the prohibited acts and Riteway. As such, Awad and Riteway argue the evidence was insufficient to support the revocation of Awad and Riteway's alcoholic beverage permit.

While the trial court reviewed the decision of the City Council *de novo*, appellate courts utilize the manifest error or clearly wrong standard to review the trial court's findings. *Bibbins v. City of New Orleans*, 02-1510 (La. App. 4 Cir. 5/21/03), 848 So. 2d 686. If two permissible views of the evidence exist, the factfinder cannot be manifestly erroneous or clearly wrong. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989).

As noted above, at the trial on this matter, the City presented evidence from various witnesses. The Shreveport police chief testified that Riteway is one of the most dangerous places in Shreveport, and he recommended that the alcohol beverage permit be revoked. Major Thomas testified that her cousin was killed on the Riteway premises in 2019. Needham also testified that her cousin was murdered outside of the Riteway. Rogers testified that numerous residents of the MLK community wanted Riteway's permit revoked, as evidenced by the signed petition presented.

9

Sgt. Cisco testified that he had firsthand knowledge of complaints of loitering in the Riteway parking lot and the sale of alcohol to a minor at the Riteway. Sgt. Cisco testified that he had spoken to Awad about security cameras, calling the police, and hiring professional security. Sgt. Cisco testified that Awad did not make these changes to protect his customers and a fight occurred on the Riteway premises. He was also aware of complaints of drug use on the premises.

Cpl. Glass-Bradley testified that he determined Riteway was a major public safety concern, based on the results of his investigation into service and offense calls to the location. Cpl. Glass-Bradley determined that there had been 102 service calls in an 18-month period and that four of them were for shootings. Cpl. Glass-Bradley testified that he had personally been involved in an investigation that determined Awad had been operating another business without a proper alcohol permit.

In its reasons for judgment, the trial court noted the above testimony, which describes several specific violations of Section 10-102 of the Code of Ordinances that could result in the revocation of an alcoholic beverage permit. The trial court took particular notice of the fact that Awad testified that he had hired security but upon further questioning by the court, revealed that he had not hired professional security personnel, several months after signing an affidavit stating that he would do so. The testimony at the trial on this matter described consistent serious, violent crimes that took place on Riteway's premises, the sale of alcohol to a minor at the Riteway drive-through, complaints to police of fights and loitering at the premises. This evidence could certainly be deemed to be in violation of Section 10-102(a),

and we cannot say that the trial court's ruling revoking Awad's alcoholic beverage permit was manifestly erroneous. This assignment of error is without merit.

**Third Assignment of Error: The decision of the district court violates Riteway's due process rights as a matter of law because inadmissible evidence was admitted at the trial de novo and considered by the trial court.**

Awad and Riteway argue that the trial court correctly ruled that the police reports attached to Cpl. Glass-Bradley's report were inadmissible hearsay but contends that the ruling was undone by allowing the evidence into the record via a transcript of the City Council's meeting. Awad and Riteway argue that the trial court relied on this hearsay evidence that was presented at the council meeting to make its ruling. Awad and Riteway contend that the conclusion that Riteway was a dangerous location was based on unsubstantiated hearsay, and thus, there was insufficient evidence to support the revocation of its permit.

In support of this argument, Awad and Riteway cite *Brossette v. Alcoholic Beverage Control Bd.*, 611 So. 2d 1391 (La. 1993), wherein the Louisiana Supreme Court ruled that the police officers' testimony repeating other parties' complaints at an earlier council meeting to prove a night club was the site of criminal activity was hearsay and should have excluded from the trial court's *de novo* review. After excluding that evidence, the court noted that the club was located in a high-crime area and there had been one murder and one serious fight. It also found that the club's owner cooperated with the police, employed police protection for the club, and suffered from its location in a high-crime area. *Brossette*, *supra*.

Awad and Riteway also refer this court to *Bibbins*, *supra*, wherein the court found that two officers' testimony regarding printouts from a computer database concerning criminal incidents at a nightclub was hearsay and should have been excluded. The printouts were not a part of the record, and the court ruled that all testimony not based on firsthand knowledge was hearsay. The court ultimately found that a physical argument outside of the club did not constitute adequate competent evidence that the club was a public nuisance. Testimony revealed that the club's owner employed five security workers and the club had taken precautions to ensure the safety of the its patrons. *Bibbins*, *supra*.

We believe that the above cases are distinguishable from the present matter. Here, the trial court did not allow the police reports attached to Cpl. Glass-Bradley's report into evidence because they were hearsay. While the trial court did allow the transcript of the City Council's meeting into evidence, we do not believe that it is clear that the trial court relied on the transcript when making its ruling.

Unlike *Brossette*, *supra*, and *Bibbins*, *supra*, there is an abundance of evidence of violations of the city ordinances that would qualify Riteway for the revocation of its alcoholic beverage permit. As described above, the trial court heard testimony from multiple police officers, a community leader, and two women whose family members had been murdered at Riteway. The record reflects firsthand testimony regarding two murders, loitering, and the sale of alcohol to an underage person on the premises. Moreover, there is abundant evidence that Awad, unlike the owners of the establishments in *Brossette*, *supra*, and *Bibbins*, *supra*, failed to take any meaningful

12

precautions to ensure the safety of its patrons.  The record reflects that the trial court commented that if Awad had hired professional security, then crime would have gone down and the court probably would not have revoked Riteway's permit.

The trial court is granted broad discretion in its evidentiary rulings, which will not be disturbed on appeal absent a clear abuse of discretion. *Fields v. Walpole Tire Serv., LLC*, 45,206 (La. App. 2 Cir. 5/19/10), 37 So. 3d 549, *writ denied*, 10-1430 (La. 10/1/10), 45 So. 3d 1097.  At trial, a party must make a timely objection to evidence that party considers to be inadmissible and must state the specific ground for the objection.  La. C.E. art. 103(A)(1); La. C.C.P. art. 1635.  On appeal, this court must consider whether the complained of ruling was erroneous and whether the error affected a substantial right of the party.  *Fields*, *supra*.  The determination is whether the error, when compared to the record in its entirety, has a substantial effect on the outcome of the case, and it is the complainant's burden to so prove.  If there is no substantial effect on the outcome, then a reversal is not warranted.  *Fields, supra*; *Crisler v. Paige One, Inc.*, 42,563 (La. App. 2 Cir. 1/9/08), 974 So. 2d 125.

The trial court assessed the entirety of the testimony and evidence presented to it when rendering its ruling.  Insofar as the City Council transcript may have included hearsay evidence, we find that any potential error in allowing that evidence to be included had no substantial effect on the outcome of the case, when compared to the record in its entirety.  Unlike *Bibbins*, *supra*, and *Brossette*, *supra*, even without the City Council transcript, there is an abundance of evidence of violations by Riteway that

the trial court could have determined justified the revocation of its alcoholic beverage permit. *See Point Proven, LLC v. City of Monroe*, 51,074 (La. App. 2 Cir. 1/13/17), 214 So. 3d 912, *writ denied*, 17-0292 (La. 4/17/17), 218 So. 3d 111; *Rhythm City Ent. Corp. v. City of New Orleans*, 09-1001, 2010 WL 8971105 (La. App. 4 Cir. 1/13/10). We find no manifest error in the trial court's ruling, and this assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, the trial court's judgment is affirmed. Costs assessed to Hasan Awad and Baydoun Liquor Mart d/b/a Riteway Liquor.

**AFFIRMED.**